RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0391p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

EXPERIMENTAL HOLDINGS, INC.,

        *Plaintiff-Appellant,*

    *v.*

JOHN R. FARRIS, in his individual capacity and in his official capacity as Secretary of Commonwealth of Kentucky Finance and Administration Cabinet, STEPHEN A. BIVEN, in his individual capacity and in his official capacity as Director, Department of Real Property, Commonwealth of Kentucky Finance and Administration Cabinet, BRIEN S. HOOVER, in his individual capacity and in his official capacity as Leasing Manager, Department of Real Property, Commonwealth of Kentucky Finance and Administration Cabinet,

        *Defendants-Appellees.*

No. 06-6394

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 06-00047—Karen K. Caldwell, District Judge.

Argued: July 20, 2007

Decided and Filed: September 25, 2007

Before: MARTIN and ROGERS, Circuit Judges; HOOD, District Judge.[*]

---

## COUNSEL

**ARGUED:** Christian A. Jenkins, MEZIBOV & JENKINS, Cincinnati, Ohio, for Appellant. Patrick W. McGee, COMMONWEALTH OF KENTUCKY, OFFICE OF LEGAL SERVICES FOR FINANCE AND TECHNOLOGY, Frankfort, Kentucky, for Appellees. **ON BRIEF:** Christian A. Jenkins, Marc D. Mezibov, Stacy Ann Hinners, MEZIBOV & JENKINS, Cincinnati, Ohio, for Appellant. Patrick W. McGee, COMMONWEALTH OF KENTUCKY, OFFICE OF LEGAL SERVICES FOR FINANCE AND TECHNOLOGY, Frankfort, Kentucky, for Appellees.

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

## OPINION

———————————

ROGERS, Circuit Judge.  Plaintiff Experimental Holdings, Inc. ("EHI") appeals the district court's dismissal of its "disappointed bidder" § 1983 claim and its state law claim alleging violations of Kentucky law covering the award of public contracts.  Because the procedural requirements of Kentucky lease procurement law do not afford EHI a property interest in getting the state to lease EHI's real property, the district court properly dismissed EHI's § 1983 claim.  It was also proper for the district court to dismiss EHI's state law claims, but on grounds different from those given by the district court.

I.

The Division of Probation and Parole for Kentucky's Department of Corrections ("DOC") needed to lease a new place to house its Kenton County office and requested that bids be solicited so that an adequate property could be located.   As required by Kentucky law, the Division of Real Properties ("DORP") was responsible for conducting the search for a space and for handling the bidding process.  This initial search, conducted in 2005, was limited to property in Kenton County.  However, DORP failed to receive any suitable bids.  In July 2006, DOC submitted a revised space request.  This time, DOC requested a smaller space than initially requested.  Once again, DORP invited property owners to submit offers for the lease contract.  Some time later, according to Jerry Briscoe, a property management program analyst for DORP, the project was declared an emergency after the past advertising attempts had failed to yield acceptable bids.

After locating property owned by  EGC Construction Corporation ("EGC"), located at 30th West 4th Street in nearby Newport in Campbell County, Kentucky, DORP expanded the search area to encompass areas outside Kenton County.  Following this expansion, DORP identified two additional properties that met the DOC's specifications: EHI's property located at 818 Monmouth Street in Newport in Campbell County, and Mid-West Properties' property located at 8275 Ewing Boulevard in Florence in Boone County.

On or around March 3, 2006, DORP conducted site evaluations of the three properties and determined that EGC's floor plan failed to meet the DOC's square footage requirements.  DORP therefore eliminated EGC from further consideration.  EHI alleges that, in response to this action, DOC Commissioner John D. Rees—unhappy with the decision to eliminate EGC —contacted Briscoe and requested that EGC be made eligible again.  As a result, Briscoe informed EGC that half of the first floor area would have to be redrawn; EGC later informed DORP that it altered its floor plan in order to comply with this request. On March 21, 2006, DORP invited the three property-owners—EGC, EHI, and Mid-West—to submit "best and final" offers for the lease contract, in accordance with certain specifications. This solicitation stated that the Lease Proposal Form (Best and Final Proposal) should be submitted in its entirety.

The bids were opened on April 25, 2006.  When opened, EHI's bid was $141,511.02 annually ($17.78 per square foot for 7,959 square feet). EGC's bid was $121,000.00 annually "plus 42% of common expenses" (for 7,882 square feet).  Mid-west Properties came in at $131,000 annually ($16.50 per square foot for 7,962 square feet).[1]  EGC had failed to comply with the strictures of the bidding process because it provided for an annual cost of $121,000 plus 42% of expenses, rather than the total set cost.

———————————————

[1]The record reveals that Mid-West, despite its low offer, was not found to have offered property that was in the best interest of the Commonwealth.  EHI does not challenge this determination.  Mid-West is not a party to this suit.

On April 25, 2006, Briscoe called EGC's representative, Shad Sletto, to inform him of this shortcoming. Sletto asked for the square footage and square-foot prices of the other bids and Briscoe gave this information to Sletto. Later that day, EGC sent Briscoe a fax, informing him that DOC's share of the expenses would amount to $18,531 per year, bringing EGC's total bid to $139,531, or $17.70 per square foot for 7,882 square feet. Thus, EGC's price-per-square foot was $0.08 less than EHI's bid. The inference that EHI makes is that, by having access to all of the relevant information, EGC was able to tailor its bid to undercut by a small amount EHI's bid, which in other relevant respects was comparable to EGC's bid.

EHI alleges that it was called by Briscoe and informed that EGC needed to "clarify" its bid. However, when EHI requested details of the other bids (just as EGC had done), Briscoe expressly declined to provide this information, claiming that it would be "inappropriate and impermissible" under the rules applicable to competitive bidding to share such information.

According to EHI, EGC was then informed of another problem with its bid—it had failed to include enough square footage. Thus, EGC was permitted to increase its "best and final" offer from 7,882 to 8,262 square feet. EGC was also permitted to lower its price-per-square foot to about $16.89, resulting in about the same total annual lease cost as EGC's prior bid. EHI alleges that EGC's price-per-square-foot was lowered in order to keep costs below EHI's.

The award of the contract to EGC was finalized on June 6, 2006.[2] On June 9, 2006, EHI filed a protest pursuant to KRS § 45A.285. In its protest, EHI claimed, inter alia, that the contract was not the best value for the Commonwealth of Kentucky. In addition, EHI's protest included a request to alter part of its bid—an inaccurate and inflated realtor's fee. On June 22, 2006, defendant John Farris, the Secretary of the Finance and Administrative Cabinet, sent EHI a Determination of Protest letter denying EHI's protest and its request to alter its bid. Farris explained that the process was conducted as an emergency procurement, and thus was governed by different provisions of Kentucky law than those governing general bid solicitations of this kind. With this in mind, Farris rejected EHI's claim that its bid would result in savings for Kentucky's taxpayers, reasoning that EHI's argument relied upon the provisions that were not applicable to emergency situations. However, in rejecting EHI's request to lower its bid due to the inaccurate realtor's fee, Farris explained that a provision of the statute that Farris had previously said did not govern the bidding process precluded EHI from changing its bid. In other words, Farris denied EHI's protest by applying provisions that he had said did not apply.

On July 13, 2006, EHI brought its first complaint against the defendants[3] in their official capacities. This initial complaint alleged two counts: a deprivation of property without due process, brought under 42 U.S.C. § 1983, and a violation of KRS § 56.803, the state statute governing the procurement process.

On July 27, 2006, defendants moved to dismiss EHI's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Specifically, defendants claimed that EHI did not possess a constitutionally protected property interest, and that the bidding process was governed by KRS § 56.805, which covers emergency

---

[2]The May 12, 2006, memorandum submitting the EGC selection for approval, in apparent error, refers to Campbell County as Franklin County, and refers to two Newport addresses as being in Covington.

[3]Defendants-Appellees are three employees of the Commonwealth of Kentucky: John R. Farris, Secretary of the Finance and Administrative Cabinet; Stephen A. Biven, Director, Division of Real Properties; and Brien S. Hoover, Leasing Manager, Division of Real Properties. EHI alleges violations of federal due process rights, and of state law, stemming from Biven's and Hoover's involvement in the entire bidding process, and from Farris's involvement in the determination of EHI's protest.

procurements, and not § 56.803.  Defendants also claimed that the suit was barred by the doctrine of sovereign immunity.

On August 1, 2006, EHI filed an amended complaint.  In the amended complaint, EHI's § 1983 claim remained largely the same as it was in the initial complaint, with the addition of individual-capacity claims against the defendants.  However, EHI altered its state law claim to allege a violation of KRS § 56.800 *et seq.*, the entire section of the Kentucky Revised Statutes that provides the rules governing public contracts for the lease of real property.  EHI claimed that defendants' conduct was in violation of Kentucky law because it was "intentionally and/or negligently misleading and/or fraudulent," and also, that such conduct was "arbitrary and capricious and contrary to applicable Kentucky law."

On August 9, 2006, defendants filed another motion to dismiss, relying on substantially the same reasoning as in their previous motion to dismiss.  In response to EHI's addition of a claim for damages against the defendants in their individual capacities, defendants raised the defense of qualified immunity.

On October 24, 2006, the district court issued its opinion and order, in which it granted defendants' motion to dismiss.  First, the district court rejected EHI's § 1983 claim, explaining that defendants had not procured the lease according to the normal operations laid out in KRS § 56.803.  Rather, defendants had procured the lease pursuant to § 56.805, an emergency provision that grants state officials broad discretion when choosing a lease contract.  In response to EHI's contention that the factual issue of whether an emergency existed could not be disposed of on a 12(b)(6) motion, the district court explained that exhibits that EHI attached to its amended complaint, in which state employees described the procurement as an emergency procurement, demonstrated that defendants were operating pursuant to the emergency provision.[4]  After establishing that defendants were acting pursuant to emergency procedures, the district court explained that those procedures granted defendants "broad discretion in locating a space meeting the agency's reasonable needs."  Because EHI had to show that the state officials had limited discretion in awarding the contract in order to succeed on its due process claim, EHI could not prevail.

Next, the district court addressed EHI's state law claims, which, in essence, alleged a violation of the entire section of the KRS pertaining to procurement of lease contracts. The district court rejected this claim, finding that EHI failed to allege properly the necessary elements to establish that defendants acted arbitrarily, capriciously, or fraudulently.

Finally, the district court rejected EHI's claims against defendants in their individual capacities.  It reasoned that because EHI could not establish that it had a constitutionally protected property interest, it could not establish a violation of a constitutional right, and therefore could not overcome defendants' defense of qualified immunity.

II.

The district court properly dismissed EHI's procedural due process claim, but we need not and do not reach the issue of whether the lease was properly procured under emergency procedures or under normal procurement procedures.  Although the parties devote considerable portions of their briefs to arguing about which procurement statute applied to the bidding process, EHI lacks a cognizable property interest under either statute and thus cannot state a constitutional claim.  Without a protected liberty or property interest, there can be no federal procedural due process claim.  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972).

---

[4]In light of our resolution of this case without reliance on the applicability of the emergency procurement procedures, we need not decide whether this use of Rule 10(c) of the Federal Rules of Civil Procedure was proper.

EHI argues that it has a property interest, but it has not shown that it has such an interest. EHI has the burden of establishing that it possessed such an interest. *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Procedural due process claims require that the plaintiff have a "legitimate claim of entitlement" with an independent source, such as state law. *Roth*, 408 U.S. at 577. Our court has already applied this law in the context of disappointed government bidders. *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31 (6th Cir. 1992) (per curiam). Under the holding of *Solomon*, a "'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officials as to whom the contract should be awarded." *Id.* at 34. As in *Solomon*, neither possibility applies in this case.

EHI relies on the second prong by arguing that the defendants abused their limited discretion in awarding the contract. The argument fails, however, because as in *Solomon*, the disappointed bidder's "interests lie in the process alone." *Id.* at 35. EHI's complaint is that the more stringent procedural requirements of KRS § 56.803 applied (as opposed to the more lax requirements of KRS § 56.805, which applies to emergency procurements), and that the defendants failed to follow these procedures. However, even if we assume for argument's sake that the more stringent requirements of KRS § 56.803 applied to the bidding process in this case, and that the procedural requirements outlined in the statute were not followed, EHI's claim fails because it "cannot have a protected property interest in the *procedure* itself." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 793 (6th Cir. 2005); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Solomon*, 960 F.2d at 34.

Indeed, if state law *procedural* protections were sufficient to create federally protected property interests, then every state law procedural violation would be a potential federal case. This case, for instance, appears to revolve entirely around the content of Kentucky law concerning government bidding. Federal law is hardly cited by the parties, and the mere words "abuse of discretion" are not sufficient to turn a state procedural violation into a federal due process case. Otherwise, most state review-of-administrative-action cases would be potential federal cases.

On the contrary, state *procedural* requirements cannot be the types of "limits on discretion" that are sufficient to find a property interest. In order for limits on discretion to create property interests, they must be *substantive* limits on discretion. There would be a substantive limit on discretion if, for instance, a state could not refuse to renew a certain occupational license unless the licensee overcharged customers. The fact that the state gives the licensee certain *procedural* rights in determining the substantive right (e.g., an oral hearing, appointed counsel, or two administrative appeals) does not turn those procedural rights into federal due process rights. Nor could it, without simply rendering state procedural law enforceable in federal court. In the given example there is arguably a property interest in not losing the license because the state lacks the discretion to deny renewal if the licensee never overcharged customers. Federal constitutional law requires a minimum level of process in making that determination, but state procedural law does not determine that minimum level. Indeed, that procedure-versus-substance dichotomy is at the very core of modern procedural due process doctrine. It is the underpinning, for instance, of holdings such as *Cleveland Board Of Education v. Loudermill*, 470 U.S. 532, 538-41 (1985), in which the Supreme Court rejected the idea that a state could not *deny* procedures otherwise required by federal courts under the guise of limiting the substantive property interest.

In the instant case, however, there is nothing that substantively gives—on certain factual conditions—the bidder the right to the contract. All the parties argue about is state procedures. EHI has not attempted to establish a substantive entitlement other than to point out that the Commissioner was required to award the contract based on the best interest of the Commonwealth. But the Commissioner could have declined to award the contract to anyone at all, KRS § 56.803(16)(a), and

the statute merely includes an inexhaustive list of considerations on which to base a decision regarding which proposal is the "best proposal in the interest of the Commonwealth," *id.* § 56.803(15)(a). There is nothing in the statute indicating an outcome certain to happen and that EHI was necessarily entitled to the contract. *See, e.g.*, *Brielmaier v. Newport Hous. Auth.*, No. 98-5245, 1999 WL 236193, at *5 (6th Cir. Apr. 14, 1999); *Expert Masonry, Inc. v. Boone County*, 440 F.3d 336, 350 (6th Cir. 2006). Because EHI was not entitled to the contract, it has not asserted a cognizable property interest, and the district court was therefore correct in dismissing plaintiff's federal law claims against defendants, in both their official and individual capacities.

III.

With respect to the state law claims against the defendant officials in their official capacity, the Eleventh Amendment provides immunity from suit in federal court. The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment. *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 117-21 (1984). There appears to be no waiver of the state's immunity from suit in federal court: the official capacity defendants moved to dismiss based on "sovereign immunity," albeit without relying on the Eleventh Amendment or federal cases. The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment.

Basing our affirmance of the dismissal of the official capacity defendants on Eleventh Amendment grounds, however, requires us to clarify that the dismissal does not preclude plaintiff's resort to any available judicial review in state court. An Eleventh Amendment dismissal of pendent state law claims is properly "with prejudice" to subsequent *federal court* suit, but it does not by itself preclude a *state court* suit from raising the same claims.[5] *See Davis v. Powell's Valley Water Dist.*, 920 S.W.2d 75, 77 (Ky. App. 1995); *see also Burlew v. Fidelity & Casualty Co.*, 276 Ky. 132, 141 (Ky. 1938). It was therefore not proper for the district court to dispose of this case on the state law merits, thereby effectively precluding judicial review of administrative action on the merits even if Kentucky law makes state courts available for such judicial review. Instead, dismissal should have been on Eleventh Amendment immunity grounds, and our affirmance is on that basis.

We similarly do not read the district court's order as dismissing on the merits any state law claims against individual capacity defendants. It is not even clear that plaintiff brought individual capacity claims based on state law. The complaint states a claim for injunctive and declaratory relief only, in the paragraph constituting "Count Two: State Law Claims." However, the general prayer for relief at the end of the complaint seeks damages. The district court's opinion does not specifically address state law individual capacity claims.

Even assuming that state law individual capacity claims were included in the totality of the claims dismissed by the district court, such dismissal would most properly be based on the discretion of the district court not to hear supplemental-jurisdiction state law claims, rather than on the merits. Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

A number of reasons, some in light of our resolution of other issues above, support the discretionary dismissal without prejudice of any state law claims against the individual defendants,

---

[5]Such a suit would of course be subject to such state law defenses as might be applicable, such as sovereign immunity or a statute of limitations.

without reaching the state law merits. First, the district court did not resolve at all the question of whether state law would provide qualified immunity to the individual capacity defendants, and this issue would logically be reached before the merits.[6] Second, although the district court, in the context of its federal law analysis, resolved the state law issue of whether the emergency procurement provisions of the state statute applied, our resolution of the federal law issues renders it entirely unnecessary to reach that state law issue. Third, we should be particularly reluctant to exercise residual supplemental jurisdiction when the issue is one involving a state administrative law scheme.

These considerations strongly support application in this case of the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law. *United Mine Workers, supra*, at 726. We accordingly read the district court's dismissal of the state law individual-capacity claims, if any there were, as based on the district court's discretion not to exercise supplemental jurisdiction over those claims. Such a dismissal is of course without prejudice to state court claims. Should such claims be brought in state court (and should they overcome any state law official immunity defenses or other applicable state law defenses), the instant case will not preclude independent state court determination of the applicability of Kentucky procurement law to plaintiff.

With this understanding, and for the foregoing reasons, we affirm the judgment of the district court dismissing the plaintiff's claims.

---

[6]The Supreme Court of Kentucky has described qualified official immunity as follows:

[W]hen sued in their individual capacities, public officers and employees enjoy . . . qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (citations omitted). The focus of the official immunity doctrine on "discretion" and "deliberation" suggests that at least one purpose of the state law official immunity is to resolve abuse-of-discretion issues in the context of judicial review of administrative action, and not in the context of tort suits. If so, the state law official immunity issue should arguably be treated before the merits, so as not to resolve administrative law issues generally as a matter of tort law.