NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0411n.06

No. 13-1521

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VENUS SPRINGS | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jun 09, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| UNITED STATES DEPARTMENT OF | ) | UNITED STATES DISTRICT |
| TREASURY, ALLY FINANCIAL INC., AMY | ) | COURT FOR THE |
| BOUQUE, KATHLEEN PATTERSON, | ) | EASTERN DISTRICT OF |
| YEQUIANG (BILL) HE, CYNTHIA DAUTRICH, | ) | MICHIGAN |
| WILLIAM SOLOMON, and ROBERT NEATON | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  When Venus Springs applied for a job at Ally Financial, she omitted some pertinent information:  Springs had been fired from her previous job at Mayer Brown, a global law firm that happened to be one of Ally's largest providers of legal services.  Ally hired Springs to assist its legal department with the selection and retention of outside law firms, and by Springs's account, the relationship went well for about a year.  Then relations quickly soured when Springs filed a workplace discrimination suit against Mayer Brown.  Because Springs had not disclosed her adversarial relationship with Mayer Brown, Ally fired her.  Springs fired back, this time accusing *Ally* of race discrimination and unlawful retaliation.  The United States District Court for the Western District of North Carolina rejected that accusation, concluding that Ally had a legitimate, nondiscriminatory reason for terminating Springs's employment.  The decision was affirmed on appeal.  Now, two years after

the North Carolina district court rejected her claims, Springs again seeks relief against Ally. And in this second incarnation of her suit against Ally, she has added several Ally employees as defendants, as well as the United States Department of the Treasury, which allegedly owned and controlled Ally. The United States District Court for the Eastern District of Michigan dismissed Springs's allegations and refused to permit her to amend her complaint to add new claims arising from the defendants' alleged post-termination retaliation against her. We affirm.

## I.

Springs joined the Charlotte, North Carolina, office of Mayer Brown as an attorney in July 2007.[1] The union lasted less than one year, however, and in May 2008 the firm told Springs that it was terminating her employment. She was given ninety days to find another job. Two months later, she completed an application to join the Charlotte office of Ally Financial as a strategic sourcing manager in the Global Procurement group—a job that would require Springs to assist Ally's legal department in its selection of outside legal vendors. After conducting several interviews and a background check, Ally hired Springs in October 2008. According to Springs, she disclosed her prior employment with Mayer Brown on both her application for employment and her background check forms. But she did not disclose her termination.

Sometime after Ally hired Springs, she filed a charge with the Equal Employment Opportunity Commission, accusing Mayer Brown of race and sex discrimination. In May 2009, after the EEOC dismissed the charge and issued a right-to-sue notice, Springs filed suit in North

---

[1] The facts in this opinion generally are taken from the complaint, but some of the procedural facts are drawn from Springs's filings in the United States District Court for the Western District of North Carolina. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). Springs cross-references all of these filings in her complaint and briefs in this case.

Carolina state court against Mayer Brown and one of its partners. The defendants removed the case to the United States District Court for the Western District of North Carolina.

The month after Springs filed her complaint, a story in *The Charlotte Observer* revealed the suit's existence. As it turns out, Mayer Brown was one of Ally's principal suppliers of legal services. Springs alleges that someone at Mayer Brown telephoned someone in Ally's legal department to discuss Springs's complaint. News of the complaint was passed to defendant William Solomon, Ally's general counsel, and he discussed it with several other Ally employees, including defendants Amy Bouque, Kathleen Patterson, Yeqiang He, Cynthia Dautrich, and Robert Neaton. That group collectively determined that "Springs had to be terminated," she alleges, and they "brainstormed" to fabricate a basis on which to terminate her employment at Ally. She further alleges that the individual defendants decided to "increase the intimidation factor" because Springs was an attorney—itself an intimidation factor, we are to presume.

To that end, Springs alleges, she was instructed to meet with someone named Lee Blasingame on the night of June 30, 2009. She was not familiar with Blasingame, a man of "intimidating size," and she "packed her pepper spray and an audio recording device because she was anticipating a physical assault or some other absolutely devastating result." The meeting took place "behind closed doors in a poorly lit room with no windows." Blasingame greeted her by saying, "How the hell are you?" before conferencing in Bouque, a human resources director, via telephone. Blasingame and Bouque questioned Springs about her discrimination suit and explained how her acrimonious relationship with Mayer Brown gave rise to the appearance of a conflict of interest.

Ally subsequently terminated Springs for failure to disclose a conflict of interest during the interview process, and Springs filed an EEOC charge accusing Ally of discrimination.

According to the complaint, Ally and several of its employees then began a campaign to harass and humiliate Springs. The defendants "act[ed] in concert to foreclose on her home, deny her COBRA insurance coverage[,] and provide false information to the EEOC." The defendants also allegedly conspired with the Federal Bureau of Investigation to "threaten [Springs's] manner of life and freedom in retaliation for" her civil rights complaint.

The EEOC dismissed her charge in March 2010, and three months later Springs filed suit against Ally, Bouque, Patterson, He, and Dautrich in North Carolina state court. That complaint alleged race discrimination and retaliation in violation of 42 U.S.C. § 1981 and the laws of North Carolina. The defendants removed the case to the United States District Court for the Western District of North Carolina, and the district court dismissed the claims against the individual defendants for lack of personal jurisdiction and awarded summary judgment to Ally. The United States Court of Appeals for the Fourth Circuit affirmed that decision in an August 2012 opinion.

About six weeks before the North Carolina district court awarded summary judgment to Ally, Springs filed this strikingly similar case in the United States District Court for the Eastern District of Michigan. The factual allegations in this complaint largely mirror the allegations in the North Carolina suit, but Springs added new causes of action and named two new individuals and the United States Department of the Treasury as defendants. The complaint includes six counts: (1) wrongful termination and retaliation, in violation of 42 U.S.C. § 1981; (2) purposeful discrimination under color of law, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution;[2] (3) deprivation without adequate notice of Springs's protected property interest in continued employment, in violation of the Due Process

_____

[2] Springs actually alleges a violation of the Equal Protection Clause of the Fifth Amendment. That amendment includes no such clause. Rather, the Due Process Clause of the Fifth Amendment includes an equal protection component. *See Washington v. Davis*, 426 U.S. 229, 239 (1976).

Clause of the Fifth Amendment; (4) civil conspiracy; (5) intentional infliction of emotional distress; and (6) tortious interference with Springs's advantageous business relationship with Ally. Ally is excluded from counts one and six, and the Treasury Department is excluded from count six. After Springs twice amended the complaint, both the Ally defendants and the Treasury Department moved to dismiss. As those motions were pending, Springs sought leave to amend the complaint a third time to add a claim alleging post-termination retaliation. The district court denied that request and dismissed the suit. That brings us to the present.

## II.

We first address the denial of Springs's motion for leave to amend her complaint. Federal Rule of Civil Procedure 15(a)(1) authorizes a plaintiff to amend the complaint once as a matter of course within twenty-one days of service of the complaint, a responsive pleading, or a motion to dismiss. After that twenty-one-day window has expired, a plaintiff may amend the complaint only with the court's leave or the defendants' written consent. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) instructs the courts to "freely give leave when justice so requires" and "set[s] forth a 'liberal policy of permitting amendments to ensure the determination of claims on their merits.'" *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). But Rule 15(a) does not give plaintiffs unbridled authority to amend the complaint. A motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile. *See Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Denial of a motion for leave to amend the

complaint generally is reviewed for abuse of discretion, but denial on the basis of futility is reviewed *de novo*. *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006).

The magistrate judge recommended that Springs's motion be denied because it was unduly delayed and would be prejudicial to the defendants. The district court ratified those conclusions but added an additional basis for denial: The proposed amendment would be futile because *res judicata* would preclude Springs from alleging post-termination retaliation. We agree that amendment of the complaint would be futile, but our rationale is slightly more nuanced. We first assess the viability of Springs's proposed post-termination retaliation claim against Ally before considering the individual defendants.

### A.

"Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998) (alteration in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Springs is precluded from litigating her post-termination retaliation claim against Ally in this case if (1) the North Carolina district court issued a final judgment on the merits, (2) the Michigan action is between the same parties (or their privies) as the North Carolina action, (3) the post-termination retaliation claim was or should have been litigated in the North Carolina action, and (4) an identity exists between the Michigan and North Carolina actions. *See Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). The first two elements are straightforward. Ally and Springs were opposing parties in the North Carolina suit, and they are opposing parties in this suit. That suit ended when the federal district court in North Carolina awarded summary judgment to

Ally—a decision that constitutes a final judgment on the merits. Accordingly, the first and second elements are satisfied.

As to the third element, there is no doubt that Springs's post-termination retaliation claims were not litigated in the North Carolina action. The Fourth Circuit bluntly stated that Springs "did not fairly present any post-employment retaliation claims to the district court for resolution." *Springs v. Ally Fin., Inc.*, 475 F. App'x 900, 901 (4th Cir. 2012). But should Springs have litigated those claims in the North Carolina action? For purposes of claim preclusion, parties must assert in one action all claims related to the transaction, or series of connected transactions, out of which the action arose. *See J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 215 (6th Cir. 1996) (citing Restatement (Second) of Judgments § 24 (1982)). No doubt this standard is amorphous, but the Restatement provides a guide to its application:

> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2).

In her proposed amended complaint, Springs alleges four discrete acts of post-termination retaliation: mortgage foreclosure, denial of COBRA insurance coverage, provision of false information to the EEOC, and harassment by the FBI. Each of these alleged acts of retaliation constitutes its own transaction because each could give rise to its own retaliation claim. But the four acts together also constitute one series of related transactions. According to the complaint, Ally was responsible for each of the retaliatory acts; the acts victimized the same person; the acts occurred over a limited period of time; and the EEOC charge was Ally's motivation for each retaliatory act, including Ally's termination of Springs's employment—the retaliatory act that

was litigated in the first action. Finite judicial resources demand that distinct but interrelated claims such as these be litigated concurrently whenever possible.

Springs's past conduct betrays her present claim that the various acts of retaliation were unrelated transactions. There is no dispute that the North Carolina action alleged unlawful retaliation in connection with Ally's termination of Springs's employment. And in her original complaint in that case, where she described the full extent of the reprisal that followed her EEOC charge, Springs alleged that "Ally continued to retaliate against Springs after her termination." The complaint explains that Ally aggressively pursued foreclosure of Springs's home through its mortgage servicing subsidiary, delayed Springs's unemployment benefits, canceled her COBRA insurance, and provided false information to the EEOC. Springs hardly would have included these acts in her complaint if she thought the acts were not connected to her retaliatory-termination claim.

Springs was right to include those post-termination retaliation claims in her North Carolina complaint. Together the various alleged acts of pre- and post-termination retaliation constituted a series of interrelated conduct—precisely the type of aggregated conduct that should be litigated at one time. That the Fourth Circuit refused to adjudicate the post-termination claims is immaterial because Springs herself is responsible for that outcome: She first sought to press the post-termination retaliation claim as a separate claim, distinct from the termination claim, in her appellate brief, and the Fourth Circuit refused to take the first pass at the merits of that claim. *See Springs*, 475 F. App'x at 901. Neither the Eastern District of Michigan nor this court can rescue Springs from her own faulty pleading and briefing in the prior action. Most of those post-termination retaliation claims could and should have been litigated in the North Carolina action.

This includes the three claims derived from the acts of post-termination retaliation alleged in the North Carolina complaint. But it does not include any claim related to the alleged FBI harassment because Springs did not know the factual basis for the FBI harassment claim during the pendency of the North Carolina suit. She says that the FBI harassment did not begin until after she filed this complaint. Her post-termination retaliation claim with respect to alleged FBI harassment therefore is not precluded because the factual predicate for that claim did not exist when she prosecuted her earlier suit. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) ("While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." (internal citation omitted)).

The fourth and final element of claim preclusion also is satisfied. "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). The facts creating the right of action were pled in Springs's North Carolina complaint, and the evidence necessary to prove those claims overlapped with the evidence necessary to prove her other retaliation claim. All of these allegations of retaliation stem from Springs's EEOC charge. *See Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001). To establish both her termination claim and her post-termination retaliation claim, Springs would submit evidence that she filed an EEOC charge against Ally and that Ally then began a campaign of retaliation.

Indeed, Springs implicitly acknowledged the identity of the termination and post-termination retaliation claims when she twice amended her complaint to add various allegations of post-termination retaliation to her termination claim.

Accordingly, amendment of Springs's complaint to allege post-termination retaliation in the form of the mortgage foreclosure, denial of COBRA insurance coverage, and provision of false information to the EEOC would have been futile because Springs would have been precluded from asserting these claims in the Michigan action.

That leaves only the FBI claim. Although we conclude that the FBI claim would not have been precluded, amendment of the complaint to add this claim nevertheless would have been futile because the claim is not plausible on its face. Springs claims that Ally conspired with the FBI to "threaten [Springs's] manner of life and freedom in retaliation for" her civil rights complaint. This bald allegation would be insufficient to survive a motion to dismiss. Springs does not describe how the FBI threatened her, how Ally might be connected to the FBI, which Ally employees solicited the FBI's assistance, or any other facts that might make her one-sentence allegation plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The district court therefore did not err when it concluded that amendment of Springs's complaint to allege post-termination retaliation by Ally would have been futile.

**B.**

We turn now to the individual defendants.[3] The North Carolina district court determined that it lacked personal jurisdiction over the individual defendants, and the court dismissed those defendants from the suit on that basis. *See Springs v. Ally Fin., Inc.*, No. 10-311, 2010 WL 5452108, at \*2 (W.D.N.C. Dec. 28, 2010); *Springs v. Ally Fin., Inc.*, No. 10-311, 2010 WL 4823242, at \*2 (W.D.N.C. Nov. 19, 2010). Dismissal for lack of personal jurisdiction is not a final judgment on the merits. *See* 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4436 (2d ed. 2002) ("[A] dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion . . . ."); *see also id.* ("There is little mystery about the res judicata effects of a judgment that dismisses an action for lack of subject-matter or personal jurisdiction or for improper venue. Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits."). The individual defendants suggest that Springs is precluded from asserting her post-termination retaliation claim against them because, despite their dismissal from the North Carolina litigation, they were Ally's privies. We need not address that argument, however, because the issue of futility is more easily resolved on another basis.

Amendment of Springs's complaint to add a post-termination retaliation claim against the individual defendants would have been futile because the proposed amended complaint does not state plausible post-termination retaliation claims against them. Nothing in count one of Springs's proposed amended complaint supports the reasonable inference that the individual defendants were responsible for the alleged retaliation. She alleges that the defendants collectively "act[ed] in concert to i) foreclose on her home, ii) deny her COBRA insurance

---

[3] Only Bouque, Patterson, He, and Dautrich were defendants in the North Carolina litigation. Springs first sued Solomon and Neaton in this case.

-11-

coverage, iii) provide false information to the EEOC[,] and iv) have her repeatedly threatened by the FBI." These threadbare allegations fall short of what is required to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 677. Springs does not allege which of the individual defendants was responsible for each of these various acts, how the defendants carried out the retaliation, or any other facts that would make this allegation something more than a bald accusation. Accordingly, amendment of the complaint to allege post-termination retaliation by the individual defendants would have been futile, and the district court did not err when it denied Springs's motion for leave to amend on that basis.

### III.

We now consider whether the district court erred when it dismissed the various causes of action pled in Springs's second amended complaint: violations of 42 U.S.C. § 1981 and the Fifth Amendment to the United States Constitution, civil conspiracy, intentional infliction of emotional distress, and tortious interference with a business relationship. We take one at a time.

### A.

In count one of her second amended complaint, Springs alleged two discrete violations of 42 U.S.C. § 1981: termination on account of her race and termination as retaliation for filing an EEOC charge. The district court concluded that the two claims were precluded because Springs litigated and lost those claims in the North Carolina suit. Springs concedes that each claim is precluded, and she does not appeal the district court's decision. But Springs insists that count one of the second amended complaint also includes a post-termination retaliation claim. She made the same argument in the Fourth Circuit, and that court rejected it. We need not decide the issue because, in all events, the post-termination retaliation claim is not viable for the reasons we just explained.

**B.**

Springs alleges two separate violations of the Fifth Amendment: race discrimination and unconstitutional deprivation of property without due process. The claims are addressed in turn.

**1.**

In count three of the second amended complaint, Springs alleges a violation of the equal protection component of the Fifth Amendment's Due Process Clause when Ally terminated her on account of her race.[4] This is simply an attempt to resurrect the discrimination claim that the North Carolina district court and the Fourth Circuit both rejected. The prior suit established that Ally had a legitimate, nondiscriminatory purpose for firing Springs, and Springs cannot relitigate whether Ally terminated her employment because of her race. *See United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003) (enumerating elements of issue preclusion).

Springs acknowledges that her Fifth Amendment claim relates to the same conduct as her § 1981 unlawful termination claims—*i.e.*, both seek a remedy for "wrongful acts in connection with Plaintiff's termination"—but argues that her equal protection claim is not precluded because different legal standards apply to Fifth Amendment claims and retaliation claims. To substantiate that argument, she cites *Heike v. Central Michigan University Board of Trustees*, No. 10-11373, 2011 WL 2602004 (E.D. Mich. July 1, 2011). Her reliance on *Heike* is misplaced. The district court in *Heike* permitted the plaintiff to assert claims under Title VI and Title IX after losing her Equal Protection Clause claim because Title VI and Title IX do not require the plaintiff to establish disparate treatment. *Id.* at *21–*22. But Springs does not assert claims under Title VI or Title IX; she asserts a disparate-treatment claim under the Fifth Amendment's Due Process Clause. Having lost her disparate-treatment claim in the North

---

[4] We will assume for present purposes that Ally was a state actor and that its employees were government officials.

Carolina action, Springs is precluded from turning around and asserting a different iteration of the same claim in this court.

**2.**

Springs next alleges an unconstitutional deprivation of property in violation of the Due Process Clause of the Fifth Amendment. The claim is not viable, however, because Springs has cited neither fact nor law suggesting that she had a protected property interest in her continued employment at Ally. Springs alleges that "[u]nder the law of the applicable states, Plaintiff enjoyed a constitutionally protected property interest in continued employment," but that proclamation alone will not suffice.

To allege a viable procedural due process claim, the plaintiff first must identify the applicable life, liberty, or property interest protected by the Due Process Clause. *See Gunasekera v. Irwin*, 551 F.3d 461, 467–68 (6th Cir. 2009). In the specific context of a claim for unconstitutional termination of the plaintiff's employment, the plaintiff must show "that he had a protected property interest in his continued employment entitling him to due process protection." *Blazy v. Jefferson Cnty. Reg'l Planning Comm'n*, 438 F. App'x 408, 411–12 (6th Cir. 2011). "[A] plaintiff cannot establish a property interest in a benefit, such as continued employment, by demonstrating merely 'a unilateral expectation' or an 'abstract need or desire for it'; he must demonstrate 'a legitimate claim of entitlement to it.'" *Id.* at 412 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Although the Constitution protects property interests, it does not create them. The interest must come from some other source—a state statute, a formal contract, or a contract implied from the circumstances, for example. *See Singfield v. Akron Metro. Hus. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *see also Gunasekera*, 551 F.3d at 467–68 (examining

professor's alleged property interest in continued employment based on university custom); *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 F. App'x 354, 357–58 (6th Cir. 2002) (discussing state statute that protects teachers). The plaintiff bears the burden of establishing that she possessed a protected property interest. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

Springs cannot merely allege that an unidentified statute provided her with a protected property interest in her job at Ally. She must identify a legitimate source of that statutory protection. *See id.* at 519–20 (affirming dismissal of plaintiff's procedural due process claim because the specific statutes identified by the plaintiff did not give the plaintiff a protected property interest in the disputed contract). We have found no law in North Carolina (where Springs was employed) that gives employees such as Springs a right to continued employment in the absence of a contract creating that right, and Springs identifies no such law. *See Franco v. Liposcience, Inc.*, 676 S.E.2d 500, 503 (N.C. Ct. App. 2009) ("North Carolina embraces a strong presumption of at-will employment unless the employment relationship fits within an exception, one being a contract specifying a definite period of employment."). Because Springs does not allege any contractual right to continued employment, she was presumably an at-will employee who lacked a protected property interest in her continued employment at Ally.

## C.

Springs also alleges that the defendants "illegally, maliciously, and wrongfully conspired with one another with the intent to and for the purpose of unlawfully terminating Plaintiff's employment." The district court concluded that this claim was precluded because the North Carolina district court determined that Springs's termination was lawful. Springs concedes that any conspiracy claim related to her termination is precluded, but she seeks to maintain a civil

conspiracy claim based on the defendants' post-termination retaliatory conduct. Even when Springs sought leave to amend her complaint to add a post-termination retaliation claim, however, she did not ask to amend her conspiracy claim to allege a conspiracy related to that post-termination retaliation. The conspiracy count does not mention the post-termination retaliation at all; it very clearly alleges a conspiracy in connection with her termination. Springs is the master of her own complaint, and we will not read into her complaint a new claim that she did not allege.

**D.**

Springs also pled a claim for intentional infliction of emotional distress (IIED). To establish a *prima facie* claim of intentional infliction of emotional distress in Michigan,[5] a plaintiff must allege extreme and outrageous conduct by the defendant that was intentional or reckless and that caused the plaintiff to experience severe emotional distress. *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004). Springs alleges that the defendants intentionally inflicted emotional distress on her through their "participation in the decision to terminate Springs and engage in post termination retaliation." More specifically, the defendants allegedly engaged in extreme and outrageous conduct when they "tried to take away her home and put her family on the street, left her family without health insurance when she paid for coverage," and "got[] the FBI to engage in ongoing harassment and threats against her freedom and her family."

Springs targets the conduct of six people, one company, and the federal government, and she accuses each of numerous acts of misconduct. As an initial matter, Springs has not alleged any extreme and outrageous conduct in connection with her termination. All of her specific allegations relate to the defendants' alleged post-termination retaliation. That allows us to pare

---

[5] The parties do not dispute that these state-law claims are governed by Michigan law.

back our inquiry to whether the complaint states a viable IIED claim based on the defendants' alleged post-termination retaliation against Springs.

Springs does not allege that the individual defendants personally participated in any of the alleged retaliatory conduct. Her allegations related to the alleged post-termination retaliation do not mention Bouque, Patterson, He, Dautrich, Solomon, or Neaton by name. There is nothing in the complaint that suggests those individuals were involved in the foreclosure or insurance misconduct, nor does Springs allege that those individuals solicited the FBI's harassment of her. We therefore affirm the dismissal of the IIED claim with respect to the individual defendants.

That leaves two defendants—Ally and the Treasury Department—and three alleged acts of extreme and outrageous conduct: accelerated foreclosure proceedings, an insurance-coverage fiasco, and FBI harassment. We take each alleged act in turn. Spring first alleges that Ally "initiated an accelerated foreclosure process" on her home. That allegation falls far short of extreme and outrageous conduct. Springs does not allege that the foreclosure proceedings were unlawful, and the initiation and acceleration of lawful foreclosure proceedings is not the type of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999). The same outcome befalls the insurance-coverage claim. Springs alleges that the defendants doubled the cost of her insurance coverage and misapplied her COBRA payments. That sort of conduct might constitute actionable retaliation, but it is not the sort of extreme and outrageous conduct that gives rise to a viable IIED claim. Springs merely attempts to dress up her allegations of post-termination retaliation in the robes of an IIED claim, but the robes do not fit.

One final allegation remains: Ally and the Treasury Department "conspired to have the Federal Bureau of Investigation threaten the Plaintiff's manner of life and freedom in retaliation for the Plaintiff exercising her civil rights." This is not a viable IIED claim for the same reason it is not a viable retaliation claim—it is not plausible. Springs does not allege how the FBI harassed her or the duration of the alleged harassment, nor does she plead any facts indicating that the defendants instigated the FBI's alleged harassment. Without understanding the factual basis for Springs's bald allegation of FBI harassment, we are unable to determine whether the defendants' alleged misconduct might plausibly be considered extreme and outrageous. Springs therefore has not pled a viable IIED claim.

**E.**

In the final count of her amended complaint, Springs alleges that the individual defendants tortiously interfered with her business relationship with Ally. As Springs acknowledges, however, an employee is not liable for tortious interference with the employer's contracts or business relationships unless the employee acted solely for his or her own benefit, with no benefit to the corporation. *See Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 801 (6th Cir. 2007). Springs alleges that the individual defendants' "acts were taken solely for their own personal benefit, and not for the benefit of Defendant Ally," but she offers nothing more than this conclusory allegation. She does not identify any personal benefit that accrued to the individual defendants, nor does she ascribe any personal motive to them. In short, the allegation consists of a "threadbare recital[]" of the elements of a claim for tortious interference, "supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 663. The district court therefore did not err when it dismissed the tortious interference claim.

**IV.**

For these reasons, the decision of the district court is affirmed.