**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0480n.06**

No. 19-2347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 13, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VERNON PROCTOR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES COURT |
| KAREN KRZANOWSKI; DESMOND | ) | FOR THE WESTERN |
| MITCHELL, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Michigan citizens can apply for a license to possess and use medical marihuana. That application must include a certification from a physician that the patient has a debilitating medical condition. Vernon Proctor, a Michigan physician, frequently issued these certifications to patients. But in 2016, a dispute between Proctor and Michigan's Department of Licensing and Regulatory Affairs ("LARA" or the "Department") over LARA's means of verifying physician certifications led LARA to temporarily reject all applications bearing Proctor's certification. Proctor now brings 42 U.S.C. § 1983 claims against two LARA employees, Karen Krzanowski and Desmond Mitchell, alleging their blanket rejections of applications accompanied by his certification violated his Fourteenth Amendment due process rights. Krzanowski and Mitchell claim qualified immunity.

Proctor contends that he has a constitutionally protected interest in helping others procure a substance banned by federal law. But that right—doubtful, at best—is far from clearly established. Accordingly, we affirm the district court's decision dismissing Proctor's complaint.

I.

In 2008, Michigan voters passed a ballot initiative legalizing medical marihuana. Mich. Comp. Laws § 333.26422. LARA is responsible for granting or denying Michigan residents a registry identification card ("registry card") entitling them to medical marihuana. *See id.* § 333.26423(m). A patient seeking a registry card must submit a written certification from a physician, with whom the patient has a bona fide physician-patient relationship, averring both that the patient suffers from a debilitating medical condition and that, based on an in-person assessment and review of the patient's medical records, the physician believes that use of medical marihuana will treat or alleviate the patient's symptoms. *Id.* §§ 333.26426(a)(1), 333.26423(q). For purposes of the act, a physician is "an individual licensed as a physician" under Michigan law. *Id.* § 333.26423(i); *see also id.* § 333.17001(1)(f).

LARA must verify the information in the application and approve or deny the application within fifteen days. *Id.* § 333.26426(c). Department rules permit LARA employees to verify physician certifications by phone, email, or mail. Mich. Admin. Code r. 333.109(d). LARA may deny an application if the application is incomplete, contains information that cannot be verified, or includes falsified information. Mich. Comp. Laws § 333.26426(c). Department rules further specify that the Department "shall deny an application" if "any information provided by the . . . physician was falsified, fraudulent, incomplete, or cannot be verified." Mich. Admin. Code r. 333.113(4)(c).

In February 2016, Krzanowski became the manager of LARA's Medical Marihuana Section. Shortly thereafter, LARA employees began calling Proctor's office to verify patient certifications, providing only the patient's name and date of birth. Proctor asked that LARA employees instead put their requests in writing. But Mitchell, another LARA employee, refused Proctor's request. Proctor also requested that LARA employees provide the date Proctor issued the certification, as LARA employees had occasionally done before. But LARA employees told Proctor that they were barred from providing him the date of the certification.

In June 2016, Proctor learned from patients as well as colleagues at another clinic that LARA would not accept applications accompanied by his certifications. Proctor called Krzanowski who confirmed that LARA would no longer be accepting applications accompanied by certifications from Proctor, allegedly because Proctor was not complying with LARA's verification process. When Proctor explained that he needed LARA to provide him the date of the certification to verify the certification, Krzanowski told him LARA could not provide that information.

In 2019, Proctor filed suit alleging that Krzanowski and Mitchell had violated his Fourteenth Amendment Due Process rights by "restricting [his medical] license without prior notice" or "post-deprivation process." DE 1, Compl., Page ID 6–8. Krzanowski and Mitchell moved to dismiss the complaint, arguing both that Proctor had failed to allege a constitutionally protected interest and that they were entitled to qualified immunity. The district court granted Krzanowski's and Mitchell's motion to dismiss, agreeing that Proctor had alleged no clearly established constitutionally protected property or liberty interest.[1] Proctor timely appealed.

---

[1] In response to Krzanowski's and Mitchell's motion to dismiss, Proctor moved to amend his complaint. The district court denied Proctor's motion to amend as futile, noting that it offered almost no new information and that the new information it did offer only further supported allegations from the first complaint the district court accepted as true

II.

Proctor's complaint alleges that Krzanowski and Mitchell issued a blanket rejection of applications accompanied by his certifications, regardless of whether they could verify the certification, without providing Proctor notice or a post-deprivation hearing. Proctor argues that, because the blanket rejection of his certifications infringed his liberty interest in practicing medicine and his property interest in his medical license, the lack of notice or post-deprivation hearing violates his Fourteenth Amendment due process rights. Krzanowski and Mitchell respond that they violated no clearly established constitutionally protected liberty or property interest of Proctor's. We agree.

An individual defendant in a 42 U.S.C. § 1983 suit is immune from liability for civil damages where her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To overcome this immunity, Proctor must show both that Krzanowski and Mitchell (1) violated a constitutional right and (2) that the right violated was clearly established. *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013).

We have "discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Because determining whether a constitutional violation has occurred "is an uncomfortable exercise where . . . the answer . . . may depend on a kaleidoscope of facts not yet fully developed," it is often appropriate to begin with the "clearly established" prong at the pleading stage. *Pearson*, 555 U.S. at 239 (first omission in original) (citation omitted). Similarly, when briefing on a constitutional question is inadequate, skipping to the clearly

---

when deciding the motion to dismiss. Proctor does not argue on appeal that the district court erred in denying his motion to amend.

established prong is advisable. *Id.* We think that guidance is applicable here and proceed directly to the clearly established prong.

A right is clearly established when it is "sufficiently clear that a reasonable official would understand that his or her conduct violates that right," *Waeschle*, 576 F.3d at 544 (quoting *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996)), "in light of the specific context of the case," *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). And while Proctor need not find a case directly on point, his asserted right must be defined "not as a broad general proposition" but rather as a "particularized" principle. *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (first quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), then quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). We look to decisions of this court, the United States Supreme Court, and the Michigan Supreme Court to determine whether Proctor's right was clearly established. *Waeschle*, 576 F.3d at 544.

To prevail on his procedural due process claim, Proctor must show that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (quoting *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). Thus, at the outset, Proctor must point to a clearly established property or liberty interest infringed by Krzanowski and Mitchell. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

First, Proctor argues that Krzanowski and Mitchell infringed his constitutionally protected liberty interest to follow a chosen profession by issuing a blanket rejection of his certifications. The state infringes an individual's liberty interest when it "distinctly alter[s] or extinguishe[s]" a

previously recognized right or privilege. *Paul v. Davis*, 424 U.S. 693, 711 (1976). But while the Fourteenth Amendment "includes some generalized due process right to choose one's field of private employment, [that rights is] nevertheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). Supreme Court cases finding a cognizable liberty right "all deal with a complete prohibition of the right to engage in a calling," not a "brief interruption" of the right. *Id.* at 292.

Those general principles do not clearly establish Proctor's claimed right. Whatever deprivation Proctor suffered from LARA rejecting applications bearing his certifications, it is far short of a full deprivation of his right to practice medicine. Because a right is only clearly established when it has been defined as a "particularized" principle, *Reichle*, 566 U.S. at 665, Proctor must point to case law establishing that isolated restrictions on the practice of medicine infringe a liberty interest. Proctor contends that *Greene v. McElroy*, 360 U.S. 474 (1959), does so. But, consistent with the cases cited above, *Greene* found that the plaintiff's liberty interest was infringed when his security clearance was revoked, causing him to lose his current job and rendering him unlikely to find future employment. *Id.* at 495. *Greene* is not sufficiently particularized to establish the liberty interest Proctor claims.

Second, Proctor argues that Krzanowski's and Mitchell's rejection of his certifications infringed his property interest in his medical license. A property interests exists when a person has a "legitimate claim of entitlement" created by substantive limits on the state discretion to deny a right or privilege enshrined in state law. *Experimental Holdings*, 503 F.3d at 519 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). While state law defines the underlying substantive interest, whether that interest "rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause" is a matter of federal constitutional law. *Memphis Light, Gas & Water*

*Div. v. Craft*, 436 U.S. 1, 9 (1978) (quoting *Roth*, 408 U.S. at 577). Both the "'weight' of the individual's interest," and "whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment" are relevant. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)).

It is true, of course, that that a physician possesses a property interest in her medical license. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) ("Suspension of issued licenses [] involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."). But for purposes of qualified immunity, we must define the right at issue with particularity. *Reichle*, 566 U.S. at 665. Here, Proctor claims a property interest in not being restricted from using his medical license to issue certifications to patients seeking a medical marihuana registry card.

That right is far from clearly established. As Krzanowski and Mitchell point out, the "'contour' of the [right to] professional licensing and medical marihuana has not been made clear in the federal realm." CA6 R. 19, Appellee Br., Page ID 34. Federal district courts have consistently rejected claims that state laws permitting medical marihuana possession can create a constitutionally protected property interest in medical marihuana or medical marihuana patient cards.[2] *See Hoover v. Mich. Dep't of Licensing & Regulatory Affairs*, No. 19-cv-11656, 2020 WL 230136, at *8–10 (E.D. Mich. Jan. 15, 2020) (collecting cases). Thus, if in 2016 Krzanowski and Mitchell had surveyed the limited legal landscape of Fourteenth Amendment protections for medical marihuana, they would have found only decisions declaring that the nature of the property interest (in possessing a substance deemed contraband by federal law) disentitled the interest to

---

[2] Proctor argues that federal law's treatment of marihuana is irrelevant to this case, noting that the Fourth Amendment protects against unlawful search and seizure even of those storing contraband. But the comparison to the Fourth Amendment is inapposite. That certain guarantees of privacy happen to protect some who possess marihuana does not establish Proctor's property interest in helping another acquire marihuana.

Fourteenth Amendment protections. *See id.* This is true even though state law imposed substantive restrictions on when medical marihuana licenses could be denied—traditionally an indicator of constitutionally protected property interests. Krzanowski and Mitchell would understandably believe that if the "nature" of the patient's interest in a medical marihuana registry card disentitled the interest to constitutional protection, the same would be true of the nature of Proctor's interest in helping patients obtain a registry card. Similarly, Krzanowski and Mitchell might reasonably believe that a physician's interest in providing a medical certification required for obtaining that patient card is not sufficiently weighty to warrant constitutional protection. Against a backdrop of federal district court cases declining to recognize a constitutionally protected property interest in medical marihuana registry cards, it could not have been obvious to Krzanowski and Mitchell that Proctor had a constitutionally protected interest participating in a process to assist others to obtain a medical marihuana patient registry card.

Proctor says that *Greene* and *Moody v. Michigan Gaming Control Board*, 790 F.3d 669 (6th Cir. 2015), clearly establish his property interest in not having his license restricted. But for myriad reasons they do not. First, in both cases the plaintiff's license was not merely restricted, but rather "revoked," *Greene*, 360 U.S. at 478, or suspended for multiple years, *Moody*, 790 F.3d at 672 n.3, rendering the plaintiff unable to use his license at all. Here, at worst, Proctor remained free to use his medical license for any purpose except issuing certifications to patients seeking registry cards. Second, neither of those cases involve a use of license to help another procure a substance banned by federal law. We have often said that a right must be clear "in light of the specific context of the case." *Binay*, 601 F.3d at 651 (citation omitted). The property interest in a license recognized in *Greene* and *Moody* would not be clear in the context of using a license to help another obtain medical marihuana.

Finally, Proctor argues that any consideration of qualified immunity is inappropriate. First, Proctor argues that Krzanowski and Mitchell are not entitled to qualified immunity because they were not exercising discretion. This argument fails. Discretionary acts "are those which involve significant decision-making that entails personal deliberation, decision and judgment." *Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987) (quoting *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 647 (Mich. 1984)). Krzanowski's and Mitchell's verification decisions and their decision to refuse all application bearing Proctor's certification were reached as a result of their "deliberation . . . and judgment." *Id.* (citation omitted).

Alternatively, Proctor contends that qualified immunity generally should not be countenanced until the summary judgment stage of trial. That is true enough. *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019). But "certain immunity questions can still be resolved at the pleading stage." *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). Unlike the more common qualified immunity cases involving conduct of law enforcement officials, here, we are not faced with a highly fact dependent analysis. It is difficult to imagine what Proctor could find in discovery that could change the outcome. Given that the Supreme Court frequently "stresse[s] the importance of resolving immunity questions at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)), it is appropriate to address qualified immunity now.

### III.

Because Proctor can point to no clearly established liberty or property interest violated by Krzanowski and Mitchell, Krzanowski and Mitchell are entitled to qualified immunity. Accordingly, we affirm the district court's dismissal of Proctor's complaint.