**Celia JONES, Plaintiff–Appellee,**

v.

**BUTLER METROPOLITAN HOUSING AUTHORITY, Defendant–Appellant.**

No. 01–3292.

United States Court of Appeals, Sixth Circuit.

July 2, 2002.

Before MERRITT, SUHRHEINRICH, and GILMAN, Circuit Judges.

MERRITT, Circuit Judge.

Plaintiff Celia Jones appeals an order of summary judgment for defendant Butler Metropolitan Housing Authority in this race discrimination case. Plaintiff brought this action charging discrimination on the basis of her race in violation of Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and Ohio Revised Code § 4112.02(A) and retaliation in violation of Title VII, 42 U.S.C. § 2000e–3(a) and Ohio Revised Code §§ 4112.02(I) and 4112.99. Specifically, plaintiff claims that defendant has (1) subjected her to disparate treatment by repeatedly refusing to promote her to a higher paying position, (2) engaged in "a continuing policy" of disparate treatment by subjecting her to "humiliation, demotion, heightened scrutiny and trumped-up charges of misconduct in an effort to artificially manufacture a pretext for terminating" plaintiff or forcing her voluntarily to quit her position and (3) retaliated against her for engaging in the protected activity of consulting with a representative of the Ohio Civil Rights Commission regarding her legal rights.

The district court found that plaintiff failed to show a prima facie case of discrimination or retaliation because she could not show any adverse employment action. Alternatively, the court concluded that plaintiff could not show that any similarly-situated, nonminority employee received more favorable treatment. For the reasons set forth below, we affirm the judgment of the district court.

I.

Butler Metropolitan Housing Authority is a subdivision of the State of Ohio engaged in leasing and operating subsidized housing to low income families in Butler County, Ohio. Plaintiff Celia Jones is an African–American who was employed by defendant as a Clerical Specialist to the Accounting Department in its main office in Hamilton, Ohio, between May 3, 1993 and August 21, 1997. James Schneider is the Executive Director of the Housing Authority. Plaintiff's direct supervisor was Emma Lucas, the Accounting Director. Both Lucas and Schneider are Caucasian.

As a Clerical Specialist, plaintiff's duties included general filing and typing, processing mail to tenants, maintaining tenants' utility logs and assisting with accounts receivable as directed. Plaintiff shared an office with Sylvia Baker, the Accounts Receivable Specialist, because she acted as Baker's back-up and occasionally assisted Baker, primarily in opening mail and stamping it and matching tenant payments with statements. Both plaintiff and Ms. Baker admit that they did not get along well and that they frequently argued over work-related issues. Plaintiff consistently received ratings of "exceeding expectations" and "substantially exceeding expectations" in her performance reviews.

In February 1994, when plaintiff had been in her position less than a year, an opening for an Accounts Receivable Specialist position became available due to a retirement. Plaintiff applied for, but was denied, the promotion. Defendant claims it denied plaintiff the transfer due to her lack of experience with Accounts Receivable. An African–American, Kimberly King, was ultimately hired for the position. Ms. King left the position after five months and was replaced by a Caucasian. Plaintiff subsequently applied for two other the positions, but she withdrew her applications both times.

On June 6, 1997, plaintiff was in the breakroom with three other employees when another employee, Germaine Jones (no relation to plaintiff), entered the breakroom complaining of a headache. Plaintiff and one of the others at her table made some comments about Germaine Jones's headache and Germaine Jones allegedly struck plaintiff on the back of the head. Plaintiff immediately wrote out a short statement about what had occurred, completed a leave slip and gave them to Germaine Jones's supervisor, Linda Wolf. Plaintiff's supervisor, Emma Lucas, was

off that day, and, in violation of Housing Authority policy, plaintiff did not consult with her acting supervisor, Ron Weaver, about the situation before going to Ms. Wolf. As a result, plaintiff and Mr. Weaver had an argument. Plaintiff then left the premises to file assault charges against Germaine Jones. Following an investigation by the Housing Authority, Germaine Jones was given a three-day suspension for striking plaintiff. A "Letter of Reprimand" was placed in plaintiff's file for insubordination for not reporting the incident to the proper supervisor and for her behavior towards Mr. Weaver after the incident. Plaintiff suffered no other consequences in terms of pay, leave or suspension arising from the incident.

Three days later, on Monday, June 9, 1997, plaintiff contacted an investigator with the Ohio Civil Rights Commission. The investigator was a family friend, and plaintiff did not file a complaint at that time. The investigator suggested that plaintiff allow the Housing Authority an opportunity to deal with the matter internally, so plaintiff typed out a statement detailing the incident with Germaine Jones and gave a copy to the Housing Authority Board of Directors, Mr. Schneider and Ms. Lucas. In the letter she also stated that she had contacted the Ohio Civil Rights Commission. The next day, also at the investigator's suggestion, she submitted a formal request for her personnel file. Later that week, plaintiff went to the Civil Rights Commission office allegedly for the purpose of filing a charge of discrimination. However, plaintiff did not file a complaint with the Commission until after she no longer worked at the Housing Authority.

Two months later, in August 1997, Sylvia Baker tendered her resignation, stating that her reason for leaving was her inability to share an office with plaintiff. About

a week later, defendant stated its intention to hire for the vacant position of Compliance Specialist in the Accounting Department. The decision was made to have the new employee share an office with Ms. Baker and have plaintiff move her workstation. Ms. Baker was asked by Mr. Schneider and Ms. Lucas if she would stay on in her position if plaintiff was moved and the new employee shared the office with Ms. Baker instead. Ms. Baker said she would stay if plaintiff was moved. Ms. Lucas told plaintiff that plaintiff must move her work station because Ms. Lucas needed to be close to the new employee in order to train her. Plaintiff's new work station was not in an actual office, but was in an open area down the hall from her old office that had been partially partitioned. Plaintiff was also told that a radio system would be installed in her new work station so plaintiff could more easily communicate tenants' maintenance requests to the Housing Authority's maintenance staff. She was also told that she would be getting a new computer that would not fit in her former workspace.

After being told of her relocation by Mr. Schneider and Ms. Lucas, plaintiff became upset, quit her job and left the building. Plaintiff then called a Housing Authority board member and talked to him about the situation. He advised her to calm down and return to work. Plaintiff then immediately came back and asked to rescind her resignation. When Mr. Schneider asked her if she planned on following instructions about the move, plaintiff became angry again and continued to insist to Mr. Schneider that she would not move. Mr. Schneider described plaintiff's behavior as continuing to be "upset and out of control" and he refused to allow plaintiff to rescind her resignation. Plaintiff followed up with a written resignation the following day.

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission on September 5, 1997. On October 2, 1998, plaintiff was issued a right to sue letter by the Equal Employment Opportunity Commission and filed this action in federal court. The case was assigned to a Magistrate Judge who recommended that summary judgment be granted to defendant. The district court judge affirmed the Report and Recommendation. This appeal followed.

## II.

Before we turn to plaintiff's claims of race discrimination and retaliation, we briefly address the issue of the admissibility of the affidavits of plaintiff and two of her coworkers.

■ The district court struck the affidavits of plaintiff's coworkers, Diane Tischbein and Jody Truss, as well as portions of plaintiff's affidavit, filed in support of plaintiff's opposition to defendant's summary judgment motion, because they consisted mainly of "hearsay, rumors, conclusory allegations and subjective beliefs." Report and Recommendation at 4–5. Under Federal Rule of Civil Procedure 56(e), all affidavits filed in support or opposition of a summary judgment motion must set forth facts that would be admissible at trial. *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993). A court therefore cannot rely on inadmissible hearsay when deciding a motion for summary judgment. Fed. R.Civ.P. 56(e); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir.1992).

A review of the affidavits in question supports the district court's conclusion. The affidavits of both Ms. Tischbein and Ms. Truss relate only hearsay by explaining what *they were told* by Linda Wolf, the Leasing Director at the Housing Authority, concerning the situation with plaintiff. Contrary to plaintiff's assertion, Ms. Wolf

is not a party-opponent, which would make her statements admissible under Federal Rule of Evidence 801(d)(2). By her own admission, Ms. Wolf, while she was often present at administrative meetings where policy and personnel decisions were made for all departments, did not participate in personnel decisions concerning plaintiff or have any authority over plaintiff. Wolf Aff. ¶ 2, J.A. at 291. Ms. Wolf's affidavit specifically states that Mr. Schneider made the decision not to allow plaintiff to withdraw her resignation. *Id.* ¶¶ 7–8, J.A. at 292. Her statements, therefore, are not admissible as the statements of a party-opponent.

The affidavits of Ms. Tischbein and Ms. Truss, as well as the portions of plaintiff's affidavit that were struck, give only each individual's impressions of what others in the organization were thinking and their opinion about those impressions. Neither Ms. Tischbein nor Ms. Truss have any authority over personnel decisions within the Housing Authority, nor were they present when any policy or personnel decisions at issue herein were made. While the affidavits may express the beliefs of plaintiff and her coworkers, that is all they are—beliefs based on innuendo, rumor and hearsay. No evidence to support these beliefs is cited.

We note, also, that even if the affidavits were admitted, we would still affirm the grant of summary judgment to defendant. The affidavits of Ms. Tischbein and Ms. Truss add very little beyond what is in the affidavit of Ms. Wolf, whose affidavit was not struck. Like Ms. Wolf's affidavit, the affidavits simply cite no evidence of discrimination based on race.

### III.

■ We now turn to plaintiff's claims under Title VII and the Ohio Civil Rights Act. We note the Ohio courts use the same analysis employed by the federal courts for Title VII claims when analyzing discrimination claims brought under the Ohio Civil Rights Act. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981).

### Count I—Failure to Promote

■ In her first count, plaintiff alleges that defendant, by and through the actions of its employees, "repeatedly refused to promote [plaintiff] to a higher-paying position solely because of her race." A plaintiff "may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence [that] would support an inference of discrimination." *Kline v. Tennessee Valley Authority,* 128 F.3d 337, 348 (6th Cir.1997). To establish a claim of disparate treatment for failure to promote, the framework from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable with a slight change. Plaintiff must show that (1) she is a member of the protected class; (2) she applied for and was qualified for the position she sought; (3) she was considered for and subsequently denied the position and (4) another employee who was not in the protected class received the promotion. *Abrams v. Johnson,* 534 F.2d 1226, 1230–31 (6th Cir.1976) (adapting *McDonnell Douglas* to a failure to promote situation).

Plaintiff sought the position of Accounts Receivable Specialist when Jane Anderson retired. The district court found that a genuine issue of material fact existed as to whether plaintiff was qualified for the position she sought. However, it is undisputed that Kimberly King, an African–American, was hired as the Accounts Receivable Specialist to replace Ms. Anderson. Plaintiff argues that Ms. King was not qualified for

the position and she was only hired because defendant was afraid that plaintiff would file a race discrimination charge against it. To support this position, plaintiff points to the fact that Ms. King left during her probationary period and was only employed five months. While five months cannot be said to be a lengthy employment, without more to show some subterfuge in the hiring it is insufficient to raise a genuine issue of material fact as to whether the hiring was a sham to quell threats of a discrimination charge. We therefore find that plaintiff was replaced by a member of a protected class when defendant hired Ms. King and we agree with the district court that plaintiff has failed to establish a prima facie case as to Count I.

### Count II—Constructive Discharge

In Count II, plaintiff contends that defendant's supervisors made her work conditions so intolerable through their humiliation and mistreatment of her that it forced her to quit. As with Count I, plaintiff has no direct evidence of discrimination. Therefore, she must establish the elements of the prima facie case described in *McDonnell Douglas:* (1) plaintiff is a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified and (4) a person outside the protected class was treated more favorably than plaintiff. Alternatively, plaintiff can establish a prima facie case by demonstrating that defendant treated her less favorably than similarly situated nonminority employees. *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992). The district court concluded that plaintiff could not make out a prima facie case where she could not demonstrate that she had suffered an adverse employment action nor could she show that she had been treated differently from a similarly situated person outside the protected class.

Plaintiff contends that she was constructively discharged, which, if true, would suffice to demonstrate an "adverse employment action" for proving the prima facie case. A constructive discharge analysis requires an inquiry "into both the objective feelings of the employee and the intent of the employer." *Yates v. Avco Corp.,* 819 F.2d 630, 636 (6th Cir.1987). To maintain an action for constructive discharge, plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 887 (6th Cir.1996). Under our case law, a plaintiff suffers an adverse employment action where there is (1) a termination of employment; (2) a demotion resulting in loss of benefits or salary reduction; (3) conferring of a less distinguished title; (4) a material loss of benefits; (5) significantly diminished material responsibilities or (6) other factors unique to the particular situation. *Id.,* 97 F.3d at 882–83. Plaintiff has not presented sufficient evidence from which we can conclude that defendant intended its conduct, or the impact of its conduct, would result in a constructive discharge.

Plaintiff's main complaint seems to be that she was moved out of the office she shared with Sylvia Baker to a partitioned space further down the hall that was not an actual office. Plaintiff claims that the move to the "hallway," as she describes it, was made to humiliate and embarrass her. Under *Kocsis,* being moved out of an office is generally not considered an adverse employment action without more. The facts here show that the office was shared and the more junior of the two people was moved out to make room for a new employee who needed to be trained. Moving one of the two persons in the shared office to make way for the new employee does

not seem unreasonable. While plaintiff claims that giving the new employee the shared office did not put the new employee significantly closer to Ms. Lucas than if the new employee has been put in the spot that plaintiff now occupied, from the description of where her new space is located, plaintiff does not appear to be too far from her former space and she is still within the accounting department and within reasonable access to the people and equipment needed to do her job.

As the supervisor, Ms. Lucas has the right to station employees in a manner that best suits her purposes and those of the organization. Sylvia Baker was senior to plaintiff and if Ms. Lucas made the decision that someone had to move so that the new employee could be close to her, then it seems logical that plaintiff would be that person. Furthermore, plaintiff's complaint about being moved from the office she shared with Ms. Baker is surprising, given the admittedly strained relationship between plaintiff and Ms. Baker. Plaintiff's relocation to a new workspace appears based on defendant's organizational needs as well as an attempt to improve the working conditions for both plaintiff and Ms. Baker by separating them.

Plaintiff also claims that the letter of reprimand that she received after the incident with Germaine Johnson was a constructive discharge. Unless the letter accompanied some other action, such as a demotion or salary reduction, it is not an adverse employment action. *Krause v. City Of LaCrosse*, 246 F.3d 995, 1000 (7th Cir.2001); *See also Kocsis*, 97 F.3d at 882–83.

Plaintiff also contends that in not allowing her to withdraw her resignation she was constructively discharged. The evidence demonstrates that plaintiff's resignation was voluntary. She tendered her resignation, both orally and in later writing. She does not claim that Mr. Schneider or Ms. Lucas coerced or even encouraged her to quit. Defendant was under no obligation to allow her to rescind her resignation, particularly where she stated that she would continue to refuse to follow her employer's instruction and relocate her workspace. Accordingly, we find plaintiff's claim of constructive discharge based on an adverse employment action unpersuasive.

■ Plaintiff also claims that she was treated differently from two similarly situated members of a non-protected group who had been allowed to rescind their resignations. The district court found that she had not put forth enough evidence as to one of the similarly situated employees, Sherry Lester, to infer discrimination. Plaintiff complains that the issue of whether others were similarly situated was not raised below by the defendant and that the district court ruled on the issue *sua sponte*. In fact, while the issue was not extensively litigated, plaintiff did raise the issue of two other allegedly similarly situated employees who were treated more favorably than her in her opposition to defendant's motion for summary judgment. Opposition brief at 18, J.A. at 130. The magistrate judge was simply responding to plaintiff's argument in his Report and Recommendation. Plaintiff cannot complain that she was not on notice of this aspect of her case.

In order to establish that she was treated differently from nonminority employees, she must show (1) she is a member of a protected class and (2) for the same or similar conduct she was treated differently from similarly-situated nonminority employees. *Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir.1999). Establishing these elements creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Comm. Af-*

*fairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

There is no dispute that plaintiff belongs to a protected class, so she must then show that similarly situated individuals were treated differently. To be found "similarly situated," the individuals with whom the plaintiff seeks to compare her treatment must have had the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differing or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998).

We agree with the district court that the major difference here between plaintiff and the two other employees she wishes to compare herself with is the fact that upon returning to her workplace and meeting with her supervisor in an effort to withdraw her resignation, plaintiff continued to refuse to sit at her new assigned workspace, the reason she quit in the first place. This refusal to comply with a reasonable request by her employer concerning office logistics, which did not happen with the other employees, keeps plaintiff from being "similarly situated" from the two other employees. Plaintiff does not contest that she told Mr. Schneider that she would only return to work if she was not required to sit at the new workstation.

Because plaintiff has not made out a prima facie case, we need not reach the question of whether defendant produced a "legitimate, nondiscriminatory reason" for the alleged different treatment.

### Count III—Retaliation

In addition to her claim of discrimination, plaintiff alleges that defendant retaliated against her for filing a charge with the EEOC and the Ohio Civil Rights Commission. To establish a prima facie claim of retaliation under both state and federal law, plaintiff must show that (1) she engaged in activity protected by state or federal law; (2) defendant knew she was engaged in protected activity; (3) defendant took an adverse employment action against plaintiff and (4) that there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997). There is some discussion in the Report and Recommendation, as well as in the parties' briefs, about whether plaintiff was engaged in protected activity during the time of the events at issue and prior to the actual filing of a complaint. We do not reach this issue because plaintiff must produce evidence that the adverse employment action was related to her protected activity, which she has failed to do. Plaintiff's retaliation claim fails for the same reason she could not make out a prima facie case of discrimination. She simply has failed to show that defendant took an adverse employment action against her. None of the action complained of constitutes an adverse employment action under our case law. The fact that she tried to get her job back and rescind her resignation and it was not accepted cannot be viewed as an adverse employment action where plaintiff told her supervisor she would not relocate her office pursuant to a reasonable request.

Nothing in the facts of this case suggest that plaintiff was discriminated against, retaliated against, disparately treated or constructively discharged. Plaintiff's work conditions were not intolerable and her supervisors did not treat her differently than others. Simply put, plaintiff got angry and voluntarily quit her job and was not allowed back when she refused to abide by reasonable rules put forth by her employer. The record shows that she had a history of conflict with others in the

organization, but there is no evidence of discrimination based on race.

For the foregoing reasons, we affirm the judgment of the district court.