NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 14a0551n.06

No. 13-4313

**FILED**
Jul 23, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DHARMA AGRAWAL, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CARLO MONTEMAGNO, JOHN G. BRYAN, and | ) | COURT FOR THE SOUTHERN |
| UNIVERSITY OF CINCINNATI, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants - Appellees. | ) | |

BEFORE: **SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Dr. Dharma Agrawal, a tenured professor at the University of Cincinnati (UC), brought this action asserting constitutional violations under 42 U.S.C. § 1983; violation of 42 U.S.C. § 1981 with regard to terms and conditions of his employment; and a state-law breach of contract claim. Defendants removed the case. On Defendants' motion, the district court dismissed all claims against UC. Following discovery, the individual Defendants moved for and were granted summary judgment. We AFFIRM the dismissal of the claims against UC. We AFFIRM the grant of summary judgment to the individual Defendants except as to the § 1981 injunctive relief claim, as to which we REVERSE and REMAND.

##### I.     Grant of UC's Motion to Dismiss

We review de novo the district court's order granting UC's motion to dismiss under Fed. R. Civ. P. 12(b)(6). *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Agrawal argues

that his state-law breach-of-contract claim against UC was an equitable action requesting injunctive relief, not an action at law for damages, and that the district court erred by dismissing it. He also argues UC waived its immunity by removing this action to federal court.

Although Agrawal concedes that the Ohio Court of Claims is the primary venue for hearing cases involving money damages against the state, he argues that the Court of Claims statute permits other courts of the state "to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief." Ohio Rev. Code § 2743.03. Pl. Br. at 66.

"[N]ot all relief falling under the rubric of restitution is available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). Seeking recovery of a sum of money caused by a breach of contractual duties is ultimately an action at law. *Id*. *Cristino v. Ohio Bureau of Workers' Compensation*, 886 N.E.2d 857, 861 (Ohio 2008) ("a claim against the state for money due under a contract is not a claim of equitable restitution and must be brought in the Ohio Court of Claims"). Agrawal's amended complaint sought, among other relief, the reinstatement "*per his contract*" of $360,000 in research funds and "control of research funds and grants as well as other support *promised in his contract* of employment." PID 96 (emphasis added). He sought the award of monies he claims were granted to him under a contract, but not paid by UC.

The district court properly determined that Agrawal's breach-of-contract claim was a "retrospective claim for damages" and that Defendants had not waived immunity by voluntarily removing the case to federal court. Although Agrawal cites *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), which held that the defendants (state university officials) waived Georgia's sovereign immunity from state law claims by voluntarily

removing plaintiff's case against them to federal court, *Lapides* is limited to state law claims for which the state has waived or abrogated its immunity from damages claims in the state trial courts. *See Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 706-07 (6th Cir. 2005) (unpublished) (*Lapides* "was limited to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings"); *see also, Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 661 (9th Cir. 2009) (holding that a state that consents to suit in state court cannot invoke a sovereign immunity defense after removing the suit to federal court); *Stewart v. N. Carolina*, 393 F.3d 484, 488 (4th Cir. 2005). Because that is not the case here, Defendants' removal from state court does not constitute a waiver of sovereign immunity on the state-law contract claim against UC. That claim was properly dismissed.

## II.  Grant of Summary Judgment to Individual Defendants

We review de novo the district court's grant of summary judgment, viewing the facts and inferences therefrom in a light most favorable to Dr. Agrawal. *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 581 (6th Cir. 2007).

The district court's order granting summary judgment sets forth the extensive pertinent background, which we adopt and do not repeat here. *Agrawal v. Univ. of Cincinnati*, 977 F. Supp. 2d 800, 805-18 (S.D. Ohio 2013). The district court agreed with the individual Defendants that most of Agrawal's challenges are time barred; that Agrawal established only one materially adverse employment action, the denial of a merit pay increase in 2010, but failed to establish that a similarly situated person was treated more favorably than he; and that Agrawal failed to show that Defendants' asserted legitimate reasons for their actions were pretextual. Alternatively, the court determined that the individual Defendants are entitled to qualified immunity.

**A.**

Agrawal argues that the district court "accepted the defendants' rendition of facts *in toto* ... and ignore[d] the central theme of [his] case:  Montemagno deliberately brought Agrawal up on charges known to be false, causing Agrawal to spend tens of thousands of dollars on defense lawyers." Br. at 12.  We disagree.  The district court recognized Agrawal's "central theme":

> Montemagno notified Dr. Agrawal that he was initiating an Article 9 investigation . . . Dr. Agrawal responded . . . , protesting that he signed the labor verification statements and that the issues about Xie had been aired and resolved by the first grievance panel's decision.  He also objected to that hearing panel's report . . .  He strenuously objected to a second disciplinary investigation, complaining that he had already incurred attorney's fees and suffered great emotional distress.  Notwithstanding Dr. Agrawal's objections, Ackerman continued her office's investigation into Dr. Agrawal's grants . . . .

PID 6210.  The court stated several times that Agrawal maintained that Montemagno intentionally set out to destroy his research career and intentionally discriminated against him, and that Agrawal denied that his own wrongdoing brought on UC's two investigations of him. PID 6198, 6200-01, 6210, 6221, 6228-29, 6243, 6245.

Citing many examples, Agrawal claims that the district court improperly accepted the defense's view of the facts.  Included in his claims is that the district court "adopted, without scrutiny," the grievance committee's findings as uncontested facts.  The court did no such thing. It summarized the grievance panel's findings, PID 6206-09, 6215-17, a logical and necessary thing to do given that Agrawal's grievances are central to his case.  The court did not state or suggest that it adopted as fact the grievance panel's findings, only that it took them into account, along with other evidence (*see, e.g.,* PID 6245 "Based upon the facts discussed in the audit reports, Dr. Agrawal's own admissions at the disciplinary hearings, *and* the conclusions of two hearing panels, the Court cannot conclude that the reasons Defendants have offered concerning the denial of merit pay are mere pretext to disguise discrimination"; PID 6244 "The Internal

Audit report, entirely separate from Bryan and Montemagno, recommended that the four controls that Dr. Agrawal agreed to in December 2009 be made permanent. The second grievance panel concluded that 'respondents had good reason to distrust Dr. Agrawal and to restrict student related grant activity. The internal controls are fully warranted administrative fiscal remedies ...' The findings of two separate internal investigations fully support Defendants' assertion that the grant restrictions were imposed based on Dr. Agrawal's own conduct.")

Agrawal contends that the district court again usurped the jury's role when it "cited Harold Carter for the proposition that Agrawal's funding proposals were not well written and consequently rejected . . ." when "[t]here is no hint of this position in Carter's letter." Br. at 14, n.32, 18. Carter testified on deposition regarding Dr. Agrawal's first grant proposal:

> [i]t was a terribly written proposal, I'm sad to say. It was very disjointed. It was just kind of a collection of these disparate kinds of things that were loosely connected because they were the same general area.
> And the English was not good.

PID 1085. That Carter's *letter* to Agrawal dated May 16, 2006, PID 1209, did not critique Agrawal's proposal writing does not negate Carter's deposition testimony. These claims are without merit, as are Agrawal's remaining claims that the district court did not abide by its obligation to view the facts in the light most favorable to him.

## B. **Time-barred Claims & Continuing Violation Theory**

We review de novo the district court's determination that many of Agrawal's alleged adverse employment actions are largely time-barred. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (an Ohio plaintiff must bring a § 1983 case within two years of the alleged adverse employment action.)

Agrawal filed his complaint in state court on October 1, 2010. The district court properly concluded that the alleged adverse actions that occurred before October 1, 2008 were time

barred, i.e., the transfer of OBR funds, transfer of office space, reduction of laboratory space and reduction in the number of his graduate students. *See Banks*, 344 F.3d at 553.

The continuing-violation theory does not revive these time-barred claims. "This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (concluding that "the Supreme Court's recently imposed limits on the viability of the [continuing violation] doctrine" in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002), apply to § 1983 claims). In *Morgan*, the Supreme Court reversed the court of appeals' application of the continuing violation doctrine, observing that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," and that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.")

This circuit recognizes two continuing-violation types, the first applies only to hostile-environment claims. *Sharpe*, 319 F.3d at 267; *Morgan*, 536 U.S. at 114-15. Agrawal's amended complaint does not allege a hostile environment claim. *See* PID 84 (amended complaint filed in Court of Common Pleas, Hamilton County, Ohio). On appeal, he nonetheless argues that a review of the record makes clear "that the department overseen by Defendants was generally hostile to Indians in particular, and "Easterners" in general. The two prime examples of this are Montemagno's mistreatment of Bhattacharya . . . and Dr. Purdy's mostly-undisciplined mistreatment of students." Br. at 30-31. As the district court noted, Bhattacharya denied that Montemagno discriminated against him; he described Montemagno as autocratic and "vicious," and that he appeared to be closer to several other department heads, but that "I don't think it had anything to do with national origin." PID 2752. And, Dr. Purdy's conduct (a professor who

made inappropriate comments to students in 2000, including using the term "turbanheads" or "towelheads") cannot be attributed to either Montemagno or Bryan since the former arrived at UC in 2006 and Bryan assumed the Vice-Provost post in or around early 2009. In addition, neither of these examples suggest or establish that Agrawal himself suffered harassment that unreasonably interfered with his work performance or created an intimidating, hostile, or offensive work environment. *See, e.g., Delaney v. Skyline Lodge, Inc.*, 642 N.E.2d 395, 399-400 (Ohio App. 1994). Because Agrawal did not allege a hostile-environment claim, the time-barred claims are not revived under this continuing-violation theory.

Agrawal also claims the second type of continuing violation applies, under which discrete discriminatory acts that are part of a longstanding and demonstrable policy of discrimination, toll the statute of limitations. *See Sharpe*, 319 F.3d at 269. "To establish this category of continuing violation, appellant must demonstrate something more than the existence of discriminatory treatment in his case, *Sharpe*, 319 F.3d at 268 (internal quotations and citation omitted), such as a continuing overarching policy of discrimination, *see LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 (6th Cir. 1995).

This claim fails as well, because Agrawal relies on the same instances: Montemagno's alleged discrimination toward Bhattacharya and Purdy's inappropriate comments to students in 2000. Agrawal's argument that the statute of limitations should be equitably tolled during the pendency of the investigations is raised for the first time on appeal, and is thus waived. *See, e.g., Geiger v. Tower Auto.*, 579 F.3d 614, 622 n.3 (6th Cir. 2009).

## C. Race and National-Origin Discrimination

Agrawal alleged that the individual Defendants, acting under color of state law in their capacities as UC officers, discriminated against him and violated his equal protection rights on

the basis of his national origin and race. PID 6221. The district court properly determined that Agrawal presented no direct evidence of discrimination. Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013). Agrawal relies on Montemagno's remark alluding to a "cultural divide" at Agrawal's second grievance hearing, but the district court correctly concluded that this statement could be interpreted several ways. Dr. Purdy's statements about Asian students in the year 2000 cannot be attributed to either Montemagno or Bryan, and Purdy played no role in Defendants' decisions regarding Agrawal.

Absent direct evidence, Agrawal must present circumstantial evidence under the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive summary judgment. *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014). Agrawal established the first two prima facie elements, i.e., that he is a member of a protected class and was qualified for his position. *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 493 (6th Cir. 2006).

Dr. Agrawal must also establish that the actions he challenges were adverse employment actions, that is, "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004). The first conduct within the two-year limitations period Agrawal points to is Montemagno's October 3, 2008 letter initiating the first Article 9 proceeding. But employer investigations into suspected wrongdoing, standing alone, are not generally considered actionable adverse employment actions, *see Arnold v. City of Columbus*, 515 F. App'x 524, 531 (6th Cir. 2013), and Montemagno's proposed discipline was not implemented, *see Mitchell*, 389 F.3d at 182; PID

6211. Finally, the letter of discipline that was to have been placed in Agrawal's personnel file has never been located, and a letter of reprimand is not a materially adverse employment action unless accompanied by a loss such as demotion or salary reduction, neither of which occurred here. *See Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013) (written reprimand that does not lead to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action); *Jones v. Butler Metro Hous. Auth.*, 40 F. App'x 131, 137 (6th Cir. 2002).

Bryan's temporary grant restrictions imposed in August 2009 were also within the two-year limitations period. But the district court properly determined that these were not materially adverse employment actions. *See Mitchell*, 389 F.3d at 182 (actions including reduction in the plaintiff professor's research lab space, revocation of mentor status, loss of graduate research assistant, proposed but unimplemented reduction in pay, forced review of grant applications, and removal from Director position were not materially adverse employment actions, independently or collectively). The investigations that prompted these restrictions were brought on by Xie's letter and Agrawal's own testimony, and Agrawal has not demonstrated that his material responsibilities were diminished or that the temporary grant restrictions had a materially adverse effect on his salary or status of employment at UC. *See Mitchell*, 389 F.3d at 183.

The district court properly determined that Agrawal failed to establish the third prima facie element, that he suffered an adverse employment action, except as to the denial of a merit pay increase in 2010. *Id.* Only the denial of a merit pay increase in 2010 constituted "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Defendants concede that

the 2010 denial of merit pay constituted a materially adverse employment action. *See Szeinbach v. Ohio State Univ.*, 493 F. App'x 690, 694-95 (6th Cir. 2012). The question then is whether Agrawal established the fourth prima facie element, that he was less favorably treated than a similarly situated person outside his protected class. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 728-29 (6th Cir. 2004). To be similarly situated a plaintiff and his proposed comparator "must have engaged in acts of comparable seriousness." *Wright v. Murray Guard*, 455 F.3d 702, 710-11 (6th Cir. 2006) ("Wright and Bradley are not similarly situated because their alleged acts of misconduct are of a very different nature, and there are legitimate reasons why Murray Guard would treat them differently.").

Agrawal inadequately briefed this issue. He asserts simply that he "presented a multitude of facts and charts to support his position that he out-performed every other member of his department, yet the raise he was granted, unlike theirs, was reversed." Even if the issue is not waived, *Geiger*, 579 F.3d at 622 n.3, Agrawal has not presented evidence from which a jury could conclude that any alleged comparator was treated more favorably than he for similar misconduct.

### D. Section 1981 Claim

Agrawal argues that the district court erred by granting summary judgment on his § 1981 claim. Agrawal's amended complaint alleged that Defendants intentionally discriminated against him with respect to compensation, terms, conditions and privileges of employment because of his race and color.

Section 1981 prohibits discrimination in the making and enforcement of private contracts, *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012). A plaintiff must present evidence sufficient to raise an inference of *intentional* race discrimination in a § 1981 action; that

is, § 1981 reaches only purposeful discrimination. *See Gen. Bldg. Contractors Ass'n v. Penn.*, 458 U.S. 375, 389 (1982). "The express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Arendale v. City of Memphis*, 519 F.3d 587, 599-600 (6th Cir. 2008) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).

The district court properly determined that money damages are not available under § 1981; claims for money damages against state officers in their official capacities are barred by the Eleventh Amendment. *Id.* at 662; *Freeman v. Mich. Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987).

However, the Eleventh Amendment does not bar continuation of a § 1981 action to the extent it seeks injunctive relief from state officers sued in their official capacities. *McCormick*, 693 F.3d at 662; *Freeman*, 808 F.2d at 1179. In dismissing the claim for injunctive relief, the district court stated that Agrawal named the individual Defendants only in their individual capacities and went on to conclude that because neither Defendant remains at UC, any prospective claim for relief against them is moot. The district court was mistaken; Agrawal clearly named Montemagno and Bryan both in their individual and official capacities. In addition, Agrawal asserts that the successor officers continue to enforce decisions made by Montemagno and Bryan: that he remains ejected from his laboratory and office, the OBR money remains under another's control, he is still suffering under Bryan's 4-point accounting structure, and he is still lacking his merit-pay increase.

Under these circumstances, since Montemagno and Bryan left UC after Agrawal brought this action, the successor officers are automatically substituted under Fed. R. Civ. P. 25(d). We thus remand for substitution of Montemagno and Bryan's successors and leave to the district

court how to proceed on remand. *See Spomer v. Littleton*, 414 U.S. 514, 522-23 (1974) (remanding to court of appeals for a determination "whether the former dispute regarding the availability of injunctive relief against the State's Attorney is now moot [because new State's Attorney was elected and respondents did not allege that he intends to continue his predecessor's practices] and whether respondents will want to, and should be permitted to, amend their complaint to include claims for relief against the [new State's Attorney].); *Patterson v. MacDougall*, 506 F.2d 1 (5th Cir. 1975) (where State officer resigned after the plaintiff filed his complaint, court of appeals remanded to district court to determine whether claims for injunctive relief were moot and whether MacDougall's successor should be substituted as a defendant to the claims for injunctive and declaratory relief.).

## E. Property Interest in Employment Contract and Reputation

The district court did not err in concluding that Agrawal's procedural due process claims failed. "A procedural due process claim requires a showing that the plaintiff has been deprived of a protected property interest without adequate process." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, *3 (6th Cir. 2014). When Bhattacharya *recommended* that Agrawal receive a merit pay increase in 2010, no increase was implemented. A protected property interest is one to which a plaintiff has a legitimate claim of entitlement under state law. *See Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997). Potential merit pay increases for tenured professors are not property rights; Agrawal was not entitled to a hearing or other process before a merit pay increase was denied. *See Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) ("Simply put, [plaintiff] can have no legitimate claim of entitlement to a discretionary decision.") Similarly, Agrawal had no protected property interest in a particular

office, laboratory space or control over the OBR funds, which funds were subject to the Board of Regents' discretion. *Id.*

#### F. Substantive Due Process

Agrawal asserts that the district court erred in determining that Defendants infringed none of his substantive due process rights: "vindictive motives and arbitrary State action give rise to constitutional causes of action," arguing that Montemagno's treatment of him "shocks the conscience because bringing false, uninvestigated, malicious allegations would shock the conscience even if not brought against fully-tenured senior university professors." Br. at 59.

"Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) (rejecting the plaintiff's claim that denial of a promotion constituted a violation of substantive due process). "Substantive due process affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental . . . . It protects those interests, some yet to be enumerated, implicit in the concept of ordered liberty." *Id.* (internal quotations and citations omitted).

Asserting that Montemagno's conduct violated his right of equal protection, Agrawal relies on *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1990), which has been interpreted as recognizing a narrow substantive due process right to protection against losing one's job because of an independent constitutional violation, *Hopkins v. Canton City Bd. of Educ.*, 477 F. App'x 349, 365-66 (6th Cir. 2012). The district court properly disposed of Agrawal's equal protection claim with his discrimination claims under § 1983. "The elements for establishing an Equal Protection claim under § 1983 and the elements for establishing a violation of Title VII disparate

treatment claim are the same." *Deleon v. Kalamazoo Cnty Rd. Comm'n*, 739 F.3d 914, 917-18 (6th Cir. 2014); *Gutzwiller*, 860 F.2d at 1325.

For these reasons, we AFFIRM the district court's order granting UC's motion to dismiss, and AFFIRM the order granting the individual Defendants' motion for summary judgment with the exception of the § 1981 injunctive relief claim, as to which we REVERSE and REMAND.