NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0048n.06

Case No. 18-5732

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JASON GATI,

    Plaintiff-Appellant,

v.

WESTERN KENTUCKY UNIVERSITY;
CRISSY PRIDDY, in her individual capacity
and in her official capacity as Assistant
Director of Graduate Admissions; BILL
KLINE, in his individual capacity and in his
official capacity as Head of the Department of
Counseling and Student Affairs,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 29, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

BEFORE: SILER, COOK, and BUSH, Circuit Judges.

COOK, Circuit Judge. While serving in the army, Jason Gati suffered a spinal injury that prevents him from sitting for more than an hour a time. After his medical discharge, he used GI Bill educational benefits to enroll in Western Kentucky University's Mental Health Counseling Program. When he discovered that he could not complete his degree by taking classes only at the satellite campus fifteen minutes from his home, he requested accommodations: that WKU permit him to participate in the classes remotely using Interactive Television technology, or offer the classes at his local, satellite campus. The university dismissed both requests as unreasonable. Gati then sued the university for disability discrimination, and two of its officers for violating state tort

and contract law. The district court granted WKU summary judgment. For the reasons that follow, we AFFIRM.

**I.**

About six years after Gati's discharge from the army, he met with WKU's Graduate Admissions Counselor Crissy Priddy to discuss his enrollment in the university's Masters in Education for Mental Health Counseling.[1] Gati contends that, from the very beginning, Priddy misled him, asserting that Gati could complete the program in its entirety at the university's satellite campus in Elizabethtown—just a few minutes from Gati's home. Priddy remembers things differently, alleging that she gave Gati the same information she provides every potential student: each university department sets its own schedules and chooses to offer its classes in different formats. But as Gati later discovered, no student could complete the Mental Health Counseling program without taking at least a few clinical courses in person at WKU's main campus at Bowling Green—an hour and a half away.

After successfully completing two semesters, Gati discovered that the Elizabethtown campus didn't offer the courses necessary for him to remain a full-time student. This presented a problem, as taking part-time status would jeopardize his GI Bill funding and his spinal injury prevented him from traveling the hour-and-a-half to WKU's main campus in Bowling Green.

He reached out to the university staff for a solution. Most immediately, Gati needed to register for a Fall 2011 counseling techniques course that the university no longer offered at Elizabethtown. After exchanging emails with Department Head Bill Kline, Ph.D. and coordinating with Student Disability Services, he registered for a new section of a previously-full class at the

---

[1] The university has since replaced this program with a Clinical Mental Health Counseling Program featuring different requirements and remote access tools.

Glasgow satellite campus. But Vice President for Student Affairs Howard Bailey warned Gati that if he took classes exclusively at Elizabethtown, he wouldn't earn enough credits to graduate until December 2017 because "the course offerings at the Elizabethtown site are not designed for full-time students."

Bailey also responded to Gati's formal grievance letter to the university requesting priority registration for class selection and permission to participate in the main campus classes through Interactive Television (ITV) or other "alternative class delivery" methods because his disability prevented him from commuting to the university's main campus. The university would grant him the former, Bailey explained, but not the latter—department faculty determined that they couldn't teach clinical counseling over ITV without jeopardizing the academic integrity of the program. The professors stressed the need for small classes where students practice body language, posture, communication, and establishing rapport, and where they receive immediate feedback from their peers. ITV would not deliver the same experience. Bailey recommended that Gati move into on-campus housing at Bowling Green to complete the required courses.

Gati sued. He alleged that the university violated the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, the Rehabilitation Act, 29 U.S.C. § 794, and Kentucky's Civil Rights Act (KCRA), KRS §§ 342–344. He also sued Dr. Kline and Priddy in their official and individual capacities for aiding and abetting the university's disability discrimination. Finally, he sued Priddy in her official and individual capacity for promissory estoppel, fraud, and tortious interference with contractual relations. The district court granted the university's motion for summary judgment and denied Gati's motion to alter or amend the judgment. Gati appeals.

## II.

"We review a district court's grant of summary judgment de novo," *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007), viewing the entire record in a light most favorable to the party opposing summary judgment and drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An entry of summary judgment stands only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Claims against Western Kentucky University

Gati asserts violations of the ADA, Rehabilitation Act, and KCRA, all of which we analyze under the same burden-shifting framework. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015) ("[T]he KCRA's language parallels that of the ADA and Kentucky courts interpret the KCRA consistently with the federal statute." (citations omitted)). "[B]ecause the purpose, scope, and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other," and we therefore discuss them concurrently. *Doe v. Woodford Cty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000) (internal quotation omitted).

These laws require a plaintiff to make out a prima facie case of discrimination, showing that: "(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (footnote omitted). A disabled person satisfies the "otherwise qualified" requirement if she can meet a program's necessary requirements with reasonable accommodation. *Kaltenberger v. Ohio Coll.*

*of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). Here, the debate centers on whether Gati proposed reasonable accommodations for his disability that the university failed to implement.

Though discrimination statutes guarantee disabled students "equality of opportunity" and "full participation" in society, 42 U.S.C. § 12101(a)(7), they do not require an educational institution to lower or substantially modify its standards to do so, *Southeastern Community Coll. v. Davis*, 442 U.S. 397, 413 (1979). They mandate only *reasonable*—not fundamental or substantial—adjustments. *Alexander v. Choate*, 469 U.S. 287, 300 (1985). In evaluating whether an accommodation exceeds the bounds of reasonableness and begins to fundamentally alter a school's educational offerings, we acknowledge that the "federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum" and should afford a university's judgment and discretion great respect. *Kaltenberger*, 162 F.3d at 436. In assessing the importance of academic requirements in health care programs especially, where "the conferral of a degree places the school's imprimatur upon the student as qualified to" practice, the judiciary ought only reluctantly intervene. *Id.* at 437 (quotation omitted).

Gati contends that he successfully established his prima facie case because he proposed two reasonable accommodations: (1) taking classes using ITV technology, and (2) WKU conducting his required counseling classes at the Elizabethtown campus. He argues that the university failed to show that it seriously considered the feasibility, cost, and academic effect of these accommodations, and failed to suggest any reasonable accommodations of its own. In response, the university asserts that both proposed accommodations would fundamentally and academically alter the counseling program, and instead recommended that Gati move into on-campus housing at the university's main Bowling Green campus to access the required classes.

Agreeing, the district court awarded the university summary judgment. We similarly conclude that no rational jury could find Gati's proposed accommodations to be reasonable.

*Taking courses remotely.* Gati challenges the university's assessment that ITV was not a reasonable accommodation, arguing that the university failed to do its homework and "show that it seriously considered the feasibility, cost, and effect on the Mental Health Counseling Program." But Gati misunderstands the prima facie analysis; as plaintiff, Gati bears the initial "burden of proposing an accommodation and *proving that it is reasonable*." *Jakubowski*, 627 F.3d at 202 (emphasis added). Conclusively stating that an accommodation is reasonable does not so make it. Moreover, WKU's faculty certainly did not find these proposals reasonable. *See* R. 37-1, PageID 676. After investigating Gati's accommodation request, the university's Vice President for Student Affairs summarized the faculty's response: "[a] primary component of the curriculum in the Mental Health Counseling Program is experiential" and necessitates "classroom interaction between students and instructor. This methodology is not possible in an ITV setting and is why the courses in this program have never been offered via ITV." Right or wrong, we must credit the university's academic decision with the widest range of deference. *Kaltenberger*, 162 F.3d at 436.

*Holding counseling classes at the Elizabethtown location.* Gati argues that offering the required counseling classes at Elizabethtown accords with the university's initial assurances that he could complete his entire degree locally and ensure that the class sizes remain small. In response, the university proffered testimony that it faces an instructor shortage—accreditation standards limit faculty course loads to three classes per semester, and its seven full-time faculty members could not teach all the classes currently offered at the main campus *and* teach at Elizabethtown. Witnesses explained that the university wanted the counseling program to maintain its accreditation, and the program couldn't if instructors needed to offer mandatory

clinical courses at the university's satellite campuses.  Dr. Kline also explained that Elizabethtown simply "didn't have sufficient demand" for the program.

Instead of moving the courses to him, the university recommended that Gati move to them and temporarily live in campus housing at Bowling Green.  Gati rejected this accommodation, responding that it's unreasonable for the university to ask a married, "grown man" to simply "pick up his life" and move to Bowling Green for a few semesters.  Appellant Br. at 30.  But as we have explained in the employment context, "an employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation.  If an employee rejects a reasonable accommodation," *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008) (citations omitted), he is no longer a "qualified individual" as a matter of law, 42 U.S.C. § 12111(8).

*Flawed interactive accommodation process*.  Gati also argues that the university's failure to engage in the ADA's required interactive process mandates reversal.  "Even if such an interactive process is required in an academic setting," *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1078 (8th Cir. 2006) (quotation omitted), this process is not an end in itself—it is a means to find a disabled person a reasonable accommodation, *see Kleiber v. Honda of Am. Mfg. Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) ("The purpose of this process is to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." (internal quotations omitted)); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015); *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840–41 (6th Cir. 2018). Thus, an employer violates the ADA when his unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee.  Here, it wasn't any failure to properly engage in the interactive process that led to the university not accommodating Gati's

disability. Negotiations broke down when Gati refused to consider the university's proposed accommodation and transferred to another school.

Finally, a "failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014). As we explained, Gati has not.

**B. Claims against Dr. Kline and Priddy in their Official and Individual Capacities**

In addition to his claims against WKU, Gati also levies claims against Dr. Kline and Priddy in their official and individual capacities. First, he asserts that Dr. Kline and Priddy aided and abetted the university's disability discrimination. *See* KRS § 344.280. And second, he sues Priddy under state law for tortious interference with contractual and prospective contractual relations, promissory estoppel, and fraud. In response, Dr. Kline and Priddy assert sovereign immunity on Gati's official-capacity claims, and qualified official immunity on the individual-capacity claims.

*Aiding and abetting the university's KCRA violation*. The Eleventh Amendment generally protects states from suit in federal court. U.S. Const. amend. XI; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996). A state that removes an action to federal court after already consenting to suit in its own courts cannot invoke Eleventh Amendment immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623–24 (2002). In Kentucky, sovereign immunity does not protect the Commonwealth against suits alleging a violation of the KCRA. *See, e.g.*, *Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 797 (Ky. 2000). Thus, because a Kentucky court can hear these claims, so can we.

But Gati still cannot prevail here. Section 344.280 of the KCRA prohibits two or more persons from conspiring "[t]o aid, abet, incite, compel, or coerce a person to engage in any of the

acts or practices declared unlawful by this chapter." KRS § 344.280(2). As the district court correctly recognized, Priddy and Dr. Kline cannot be liable in either their official or individual capacity for aiding and abetting the university's discrimination if we conclude that Gati failed to present a prima facie case that the university discriminated. *See, e.g.*, *CNH Capital Am. LLC v. Hunt Tractor, Inc.*, 568 F. App'x 461, 472–73 (6th Cir. 2014) (requiring an underlying tort to find defendants guilty of conspiring to commit a fraudulent conveyance).

*Other state law claims*. Unlike his aiding and abetting argument, Gati's claims against Priddy in her official and individual capacities for other garden variety state law violations require separate treatment.

The official capacity claims here present at first blush a textbook example of what the Supreme Court in *Pennhurst State School & Hospital v. Halderman* forbade federal courts from considering: a pendent state law claim against a state official in her official capacity. 465 U.S. 89, 117–121 (1984). "The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment," irrespective of the type of relief sought. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007). "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121.

WKU's removal of this case to federal court presents a jurisdiction quagmire. To resolve it, we must decide whether the Kentucky legislature waived immunity on these issues. *See Agrawal v. Montemagno*, 574 F. App'x 570, 573 (6th Cir. 2014) ("*Lapides* is limited to state law claims for which the state has waived or abrogated its immunity.") Kentucky law requires that any waiver be explicit, *see Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 305 (Ky. 2014), the parties

offered no authority to assist this court to determine whether it has done so for these claims, and we have found no evidence of a waiver ourselves. Thus, the university's removal to federal court does not waive its immunity, and the Eleventh Amendment bars us from considering the merits. The official-capacity claims stop here.

Gati also sued Priddy in her individual capacity on these same tort and contract claims. Priddy argued that qualified immunity shields her from liability. Under Kentucky law, qualified immunity protects public employees sued in their individual capacities so long as the employee performed "(1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Though Gati claims that this immunity does not cover liability for intentional torts, citing *Yanero*, Kentucky's Supreme Court has expressly rejected this narrow reading of *Yanero*. *Martin v. O'Daniel*, 507 S.W.3d 1, 5–6 (Ky. 2016) ("[Q]ualified official immunity is not limited to negligence actions."); *see also Mosley v. Brock*, No. 2016-CA-001020-MR, 2018 WL 4849714, at *6 (Ky. Ct. App. Oct. 5, 2018).

Gati claims that Priddy performed only ministerial—not discretionary—work in her capacity as an admissions counselor. Ministerial work includes those tasks that an employee must do "without regard to his or her own judgment" unlike those duties requiring the employee to "make a judgment call, or set a policy," *Marson v. Thomason*, 438 S.W.3d 292, 296–97 (Ky. 2014). "In other words, if the employee has no choice but to do the act, it is ministerial." *Id.* at 297.

"[M]ost immunity issues are resolved by examining the nature of the functions with which a particular official or class of officials has been lawfully entrusted." *Id.* at 296 (internal quotations omitted). In *Marson*, the Kentucky Supreme Court explained the difference between ministerial and discretionary duties. *Id.* at 296–98. A school custodian tasked with preparing a gym for students every morning by extending the bleachers and turning on the lights performs a ministerial

duty. *Id.* at 298. On the other hand, the principal hired to run the school and delegate different job duties to his staff works in a discretionary capacity. *Id.* at 300. "The distinction between discretionary acts and mandatory acts is essentially the difference between making higher-level decisions and giving orders to effectuate those decisions, and simply following orders." *Id.* at 297.

As Assistant Director of Graduate Admissions, Priddy processed applications, oversaw other staff members who processed applications, and reported matriculation statistics to the graduate dean. She also recruited students to enroll in the school—visiting various satellite campuses and very generally informing students about the variety of WKU's educational offerings. Priddy met with Gati in her capacity as a recruiter and answered his questions about the school's Mental Health Counseling Program. Her advice to Gati parroted publicly available sources. This is ministerial. Concluding, as the district court did, that Priddy's recruitment efforts constitute discretionary work would "risk limiting ministerial acts to almost nothing except those acts that are directly compelled by an order or rule. In so doing, we would undermine the rule that an act can be ministerial even though it has a component of discretion." *Marson*, 438 S.W.3d at 302.

Without immunity shielding Priddy from suit, we reach the merits on each of the promissory estoppel, fraud, and tortious interference with contract claims. First, Gati asserts that this court should enforce Priddy's assurances that he could complete his degree locally under the principle of promissory estoppel. Kentucky law states that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 472 (6th Cir. 2011) (internal quotation omitted).

Gati's argument fails at the first stage—Priddy made Gati no promises. Kentucky law characterizes a promise as "a manifestation of *intention to act* . . . so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981) (emphasis added); *Ashland, Inc.*, 648 F.3d at 472 (noting that Kentucky law relies on the Restatement). In his complaint, Gati stated that Priddy "assured [him] that the counseling program was wholly offered at the Elizabethtown campus" and that "courses needed to complete the counseling program would either be offered on-site at the Elizabethtown campus or online via [ITV]." R. 1, PageID 8. These are not *promises* or commitments to provide Gati specific services—they are *statements* about the availability of certain university programs.

Further, while arguing that Priddy worked in a ministerial capacity, Gati noted her assurances about the location and availability of classes "were presented as facts," and did not require any "judgment calls." Appellant Br. at 38–39. Gati cannot now argue the other side, claiming that Priddy stepped into a discretionary role and made the "higher-level decision" to promise Gati that the university would provide him with the classes he needed to take at Elizabethtown or via ITV.

Second, Gati alleges that Priddy fraudulently misrepresented the course offerings at Elizabethtown. Fraud through misrepresentation in Kentucky requires a plaintiff to prove that "(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011). Assuming that Gati meets the first two elements, Gati has still failed to show that

Priddy knew Gati couldn't complete the entire counseling program at Elizabethtown, but deliberately or recklessly represented otherwise. Gati has not identified any proof that Priddy knew that not all of his required counseling classes were offered at Elizabethtown. And Priddy has testified unopposed to the contrary. "Unsupported allegations are insufficient to create a genuine issue of material fact." *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 825 (Ky. Ct. App. 2007).

Finally, and similarly unavailingly, Gati contends that Priddy tortuously interfered with his contractual and prospective contractual relations. Kentucky law makes "clear that a party may not recover . . . in the absence of proof that the opposing party 'improperly' interfered with his prospective contractual relation." *Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1988). To prove improper interference, Gati "must show malice or some significantly wrongful conduct," *id.* at 859, including fraudulent misrepresentation, deceit, or coercion, *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 487 (Ky. 1991); *see also* Restatement (Second) Torts § 767 cmt. c. He has not done so, and the record supports no such conclusion. In responding to WKU's motion for summary judgment, Gati simply contended that Priddy's "intentions and motivations are questions of fact for the jury to determine." R. 41, PageID 791–93. This is insufficient. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) ("[T]he inquiry [on a motion for summary judgment] is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). Although we view the evidence in the light most favorable to the non-moving party, Gati must do more than merely show the existence of some "metaphysical doubt as to the material facts" to defeat the university's motion. *Matsushita*, 475 U.S. at 586.

**III.**

We AFFIRM.